RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0233p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

ROBERT FLORES,

　　　　　　　　*Defendant-Appellant.*

No. 08-3359

_____

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 06-00239-003—David D. Dowd, Jr., District Judge.

Submitted: June 18, 2009

Decided and Filed: July 6, 2009

Before: MOORE and GILMAN, Circuit Judges; PHILLIPS, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** David L. Grant, LAW OFFICES, Cleveland, Ohio, for Appellant. Samuel A. Yannucci, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge.　Robert Flores appeals the district court's denial of his motion to suppress the evidence used against him. Flores was arrested and indicted along with seven other individuals for participating in a drug-distribution ring. He pled guilty to one count of conspiracy to possess with the intent to distribute cocaine and heroin. The sole argument he raises on appeal is that the initial

_____

[*] The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

*Terry* stop of his vehicle was made without reasonable suspicion.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

This case arose out of an extensive investigation by the Organized Crime Drug Enforcement Task Force in Akron, Ohio.  The investigation focused on the drug-dealing activities of Michael Lashawn Spragling.  Drug-enforcement agents obtained several court-authorized wiretaps in December 2005 and monitored Spragling's communications with his associates.  In intercepted conversations, the agents noted that Spragling often referred to "The Spot."  The agents had good reason to believe that Spragling used that phrase to refer to a "stash house" located at 1228 Delos Street in Akron, Ohio.

On December 10, 2005, the agents intercepted a call from a Hispanic male whom Spragling called "Pops."  The agents traced Pops's telephone to a subscriber named "Joe Diaz."  Pops and Spragling discussed a shipment of heroin and cocaine to Spragling in the near future, and agreed that the payment for the drugs would be "COD" (cash on delivery).  On the evening of December 15, 2005, investigators intercepted another call from Pops, who told Spragling: "Hey, my man Bobo is going to be there in five minutes."  Spragling replied: "I'm here.  Tell him to come in."

The agents immediately went to 1228 Delos Street.  Once there, they observed an unfamiliar maroon Jeep Grand Cherokee parked in the driveway.  Agent Kevin Borchert, one of the Task Force members who went to the residence that evening, testified that because 1228 Delos Street had been under surveillance for some time, the agents were very familiar with the vehicles that Spragling and his associates usually used.  The agents ran the license plate of the Jeep and found that the vehicle belonged to Robert Flores of Westerville, Ohio, who was also unfamiliar to the agents.

Agent Borchert testified that he and other Task Force members continued to monitor the residence that evening.  The Jeep eventually departed, and the agents followed it.  When the Jeep entered the interstate highway system, the agents decided

to stop the vehicle.  Sergeant Jason Malick, who initiated the traffic stop, admitted that neither the driver nor the Jeep was in violation of any traffic laws.

Flores was the driver of the Jeep.  Once the police stopped the vehicle, they obtained his consent to conduct a search.  The police then discovered more than $20,000 of cash packaged in plastic shrink wrap in a duffel bag on the backseat.  After a canine team was called in, the dog alerted to the odor of narcotics on the duffel bag, but no drugs beyond trace amounts were found.  Flores was allowed to leave after the police confiscated the cash.  Three days later, Agent Borchert located Flores's Jeep at the Cleveland airport and placed a tracking device on it.  By tracking the Jeep, the agents uncovered more evidence that incriminated Flores and others.

Flores was subsequently arrested and indicted on multiple drug counts, along with seven codefendants.  He filed a motion to suppress the evidence.  After a hearing, the district court denied the motion.  Flores then entered into a conditional plea of guilty to one count of conspiracy to possess with the intent to distribute cocaine and heroin, reserving the right to contest the adverse ruling on his motion to suppress.  The district court sentenced Flores to 120 months of imprisonment and five years of supervised release.  Flores now appeals the district court's denial of his motion to suppress.

## II.  ANALYSIS

### A.      Standard of review

Where the issue on appeal is the denial of a motion to suppress, we review the district court's findings of fact under the clear-error standard and its conclusions of law de novo.  *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000).

### B.      Analysis

On appeal, Flores challenges the initial stop of his Jeep.  He argues that the agents lacked reasonable suspicion to stop his vehicle because the only fact upon which they relied to conduct their search was that he "exited from a house which they believed to be used for stashing drugs."  Flores contends that all of the evidence subsequently

obtained should be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471 (1963).

An investigative stop of a vehicle is permissible under the Fourth Amendment where the stop is supported by reasonable suspicion of wrongdoing. *Terry v. Ohio*, 392 U.S. 1, 22 (1968); *United States v. Williams*, 962 F.2d 1218, 1223-24 (6th Cir. 1992). Because an investigative stop is less intrusive than an arrest, the level of suspicion necessary for such a stop is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Reasonable suspicion must be "supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Id.* (quoting *Terry*, 392 U.S. at 30). The court should consider the "totality of the circumstances" and evaluate whether the detaining officer had a "particularized and objective basis" for suspecting wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). It should not look at the facts in isolation. *Id.* at 274; *see also United States v. Martin*, 289 F.3d 392, 397 (6th Cir. 2002) ("[C]ourts do not separately scrutinize each factor relied on by the officer conducting the search.") This is so because, "[a]lthough each of [a] series of acts [is] perhaps innocent in itself, . . . taken together, they [might] warrant[] further investigation." *Arvizu*, 534 U.S. at 274 (citation and internal quotation marks omitted).

"While reasonable suspicion must be based on more than 'ill-defined hunches,' officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006) (quoting *Arvizu*, 534 U.S. at 273). The Supreme Court and this court have also held that although "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime," a location's characteristics are relevant "in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *see also United States v. Caruthers*, 458 F.3d 459, 467-68 (6th Cir. 2006).

In the present case, testimony by various agents at the suppression hearing established that there had been a lengthy investigation into the illegal activities of Spragling, who was believed to be the leader of a major drug-trafficking ring. The investigation included information from confidential sources, controlled purchases of narcotics, extensive surveillance, telephone-toll analyses, and court-authorized wiretaps. From this investigation, the agents had learned the address of "The Spot," believed to be a place where Spragling and his associates stashed drugs and money.

Based on this background knowledge and the two intercepted telephone calls described in Part I. above, the agents had enough information to justify a *Terry* stop of Flores's Jeep. Contrary to what Flores claims, the agents did not rely solely on the fact that he had emerged from the residence. Their suspicion was based on the intercepted conversations indicating that a drug delivery was about to take place, their reasonable belief that "The Spot" was a location where Spragling and his associates stashed drugs and money, and the unfamiliar Jeep in the driveway of the house at the time of the scheduled delivery.

Flores argues that because the agents did not have a description of the person referred to as "Bobo" or a description of Bobo's vehicle, there was no basis for them to know that he was Bobo. Nor did the agents know how long Flores had been at the residence, given that the Jeep was already parked in the driveway when the agents arrived. Finally, Flores points out that the intercepted telephone calls never mentioned the Delos Street address or any address where the transaction was supposed to take place.

But law enforcement officers need not have certainty in order for a suspicion to be reasonable. The standard is whether they are "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21. Based on the information that the agents had gained from their investigation, they reasonably believed that a drug delivery was about to take place at "The Spot," which the agents had previously identified as the Delos Street address. They could also reasonably infer that Flores was there to make the

scheduled delivery, even though it was theoretically possible that he was there for some innocent purpose. The agents had more than "an ill-defined hunch" that the Jeep parked at "The Spot" on the evening of December 15, 2005 was there for an illicit purpose; they could point to specific and articulable facts supporting their belief that the driver of the unfamiliar vehicle was there to complete a drug delivery. We thus conclude that the district court did not err in denying Flores's motion to suppress the evidence against him.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.