NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0747n.06

No. 09-3192

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 01, 2010**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                )
                                         )
    Plaintiff-Appellee,              )
                                         )
                                         )    ON APPEAL FROM THE
    v.                               )    UNITED STATES DISTRICT
                                         )    COURT FOR THE SOUTHERN
ALBERT WARD,                             )    DISTRICT OF OHIO
                                         )
    Defendant-Appellant.             )
                                         )

BEFORE: GUY and GRIFFIN, Circuit Judges; and BARZILAY, Judge.[*]

BARZILAY, Judge.

Appellant Albert Ward ("Appellant" or "Ward") brings this appeal following his conviction

for (1) knowingly, intentionally, and unlawfully possessing with intent to distribute more than 50

grams of cocaine base and (2) knowingly and intentionally maintaining a place for distributing the

drugs. He raises three issues before the court. First, he claims that the district court erred in denying

his Motion to Suppress the evidence found in his hotel room because he did not voluntarily consent

to the room's search. Second, he challenges the district court's denial of his Motion to Suppress the

same evidence because he believes that the police seized him without reasonable suspicion, which

in turn tainted his supposed consent to search his hotel room. Finally, he contends that the district

court misapplied the Federal Sentencing Guidelines when it included in his criminal history category

_____

[*]The Honorable Judith M. Barzilay, Judge, United States Court of International Trade,
sitting by designation.

calculation a criminal offense that he committed as a juvenile. For the reasons given below, Appellant's arguments fail.

## I. Background[1] & Procedural History

On June 2, 2007, Middletown, Ohio police officer Detective Winters responded to a disturbance between a male passenger in a green car and a woman standing next to the car in a Putt Putt Golf Center parking lot. Upon arrival, Detective Winters observed what appeared to be an altercation between Tosia Clemons ("Clemons") and the car's occupants. The vehicle's driver, Brandon Davis ("Davis"), and passenger, Kyron Thomas ("Thomas"), drove off. Detective Winters pursued them and pulled the car over at the Best Value Inn. When Detective Winters observed Thomas making frantic movements to and from the car's console area, he ordered him to step out of the car and conducted a pat-down search of Thomas's outer clothing, during which he found 2.8 grams of crack cocaine. The detective also seized ammunition that he observed on the floorboard of the passenger side of the car and found two guns, a .32 caliber and .38 caliber, in the vehicle. Detective Winters arrested Thomas.

At that point, Detective Winters contacted Officer Birch to pick up Clemons. Officer Birch complied and brought Clemons to the Best Value Inn. Officer Birch questioned Clemons, who informed him that she, Thomas, and Davis had stayed in the Best Value Inn the previous night but subsequently had checked out of their room. Officer Birch then spoke with the hotel clerk, who informed him that Thomas, Davis, and Clemons had checked out of Room 224 and had checked into Room 220. Based upon the weapons and crack cocaine found on Thomas's person and in the car,

---

[1] The undisputed facts of this case come from the district court's order denying Appellant's motion to suppress. *See generally* R.E. Doc. 84 (*United States v. Ward*, No. 1:07-CR-73-001, 2008 WL 2635061 (S.D. Ohio June 27, 2008) (order denying motion to suppress)).

Officer Birch asked the hotel staff to take him to Room 224. The cleaning lady, however, mistakenly led him to Room 220 and knocked on the door. When a man, later identified as Ward, opened the door, Officer Birch asked if he knew Davis. The room's occupant said he did not and closed the door.

After realizing that the cleaning lady had led him to the wrong room, Officer Birch radioed Detective Winters to inform him that another suspect was in the room that Thomas, Davis, and Clemons had rented that morning. Detective Winters spoke with Clemons, who told him that another gun might be in the hotel room. Officer Birch consequently waited outside the hotel room for five to ten minutes until Ward came outside. Officer Birch detained and cuffed Ward at gunpoint. Officer Birch did not read him his *Miranda* rights, but advised him that they had found crack cocaine and two weapons in the car of the apprehended suspects and that they had information that another gun might be in Ward's hotel room. Officer Birch and the newly-arrived Officer Stone asked Ward for permission to search the hotel room for a gun, which Ward gave by signing a consent-to-search form. Before Ward signed the form, the officers informed him that he was not required to do so. According to the officers, Ward gave no indication that he did not understand his right not to consent. Officer Birch searched Room 220 and found 792 grams crack cocaine in the refrigerator. He found no gun.

On June 20, 2007, a grand jury for the Southern District of Ohio, Western Division, returned an indictment that charged Ward with: (Count 1) "conspir[ing] to knowingly, intentionally and unlawfully possess with intent to distribute in excess of 50 grams of cocaine base (crack), a Schedule II Controlled Substance," in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); (Count 2) "knowingly, intentionally, and unlawfully possess[ing] with intent to distribute in excess of 50 grams of cocaine

3

base (crack), a Schedule II Controlled Substance," in violation of § 841(a)(1) and (b)(1)(A); and

(Count 4) "knowingly and intentionally maintain[ing] a place . . . for the purpose of distributing a

Schedule II Controlled Substance," in contravention of 21 U.S.C. § 856. R. Doc. 13 at 1-5. At trial,

Ward moved the court to suppress the evidence seized from his hotel room on the grounds that he

did not voluntarily consent to the search. The court denied the motion. R. Doc. 84 (*United States*

*v. Ward*, No. 1:07-CR-73-001 (S.D. Ohio June 27, 2008) (order denying motion to suppress)). The

court based its reasoning on several factors:

> [T]he Defendant is 29 years old and, according to the Pretrial Services Officer, has a GED degree. The Defendant has undergone treatment for psychiatric problems in the past, but the mental health assessment prepared by the Bureau of Prisons in this case indicates that the Defendant is competent to assist with his defense. Although [he] scored at the low end of intellectual range on the Wechsler test, the report also indicates the results may underestimate his true level of cognitive functioning. Therefore, the Defendant's age, education, and intelligence indicate that his consent was freely given. Additionally, [he] has many prior arrests and convictions, which also supports the conclusion that his consent was voluntary. . . .
>
> [Furthermore], although the Defendant was in custody at the time he gave consent, this fact is not dispositive of the issue of voluntariness. The police advised Ward of his constitutional right to refuse to consent to the search, which supports a finding that his consent was voluntary. During the evidentiary hearing, police officers testified that Ward indicated that he understood that he could refuse to consent to the search. Also, the interval between the Defendant's detention and his consent to search was brief, which supports a finding of voluntariness because it indicates that the police did not overbear [his] will. There is no evidence that the police used threats, promises or other forms of coercion to obtain the Defendant's consent. . . .
> . . . .
> The only issue that gives pause is whether Officer Birch had a reasonable suspicion to seize the Defendant based on information provided by Tosia Clemons concerning another gun possibly being involved in the case. . . .
> . . . .
> Under the totality of the circumstances of this case, the Court finds that Officer Birch had reason to believe that the Defendant was armed and dangerous. Therefore, Officer Birch's stop and seizure of the Defendant was justified under the Fourth Amendment. Consequently, the Defendant's consent to search his room was not vitiated by an illegal stop and seizure. When Officer Birch stopped the

4

Defendant, he was continuing the investigation from the traffic stop in the hotel parking lot in which crack cocaine and two guns were recovered. The Defendant's presence at the hotel room was a surprise to Officer Birch because he expected the room to be unoccupied when he arrived to look through it. The Defendant's unexpected appearance introduced a level of uncertainty into the situation. Then, Officer Birch learned from the other officers, via Tosia Clemons, that there was possibly a third gun involved in the crime and that it was in the Defendant's room. Clemons was obviously in a good position to provide this information because she had informed the officers that she spent the night in the hotel room with co-Defendants Thomas and Davis. Therefore, because of the guns and drugs already recovered, it was reasonable for Officer Birch to believe the Defendant had possession of or ready access to another gun. Indeed, given that the officers found two guns with two of the suspects, it would be reasonable to believe that the third person that was apparently involved could be armed as well. Given these circumstances, therefore, it was reasonable for Officer Birch to stop and seize the Defendant when he exited the hotel room in order to protect his safety and that of the other officers at the scene. Therefore, the Defendant's consent to the search was not tainted by an illegal stop and seizure.

R. Doc. 84 at 6-10 (citations omitted). The court also noted that Clemons later denied telling Officer Winters about a possible third gun in the hotel room; however, the court found this testimony not credible, because Clemons was an "admitted daily marijuana use[r] at the time of [Ward]'s arrest" and possessed a "volatile and hysterical personality [that] render[ed] her perception and recollection of the unfolding events unreliable." R. Doc. 84 at 3 n.1.

On September 17, 2008, the jury returned a guilty verdict for Ward on Counts 2 and 4 of the indictment. Before sentencing, Ward filed an objection to his Presentence Investigation Report. Specifically, he contested the inclusion of his adult felony drug trafficking conviction for purposes of enhancing his sentence pursuant to 21 U.S.C. §§ 841 and 851 because he was seventeen years old at the time of the offense. R. Doc. 123 at 1. The district court denied Ward's challenge because Ward had been convicted as an adult and sentenced to serve over a year in prison for that crime. Ward did not object to the court's finding that he had a Criminal History Category of III. The court

5

determined that the Sentencing Guidelines required Ward to receive a mandatory minimum sentence of 240 months for Count 2. It also sentenced him to 235 months on Count 4 to run concurrently. Ward now appeals. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Discussion

### A. The Motion to Suppress

Appellant challenges the district court's denial of his Motion to Suppress on two grounds: that the district court erred in finding that he voluntarily consented to the search of his hotel room and that the district court should have found that the police lacked reasonable suspicion to detain him, which in turn tainted his consent to search his hotel room. When reviewing a district court's denial of a motion to suppress, this court examines the lower court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Flores*, 571 F.3d 541, 544 (6th Cir. 2009); *accord United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006). The court will overturn a district court's factual findings only if they convey a "definite and firm conviction that a mistake has been committed." *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999) (citation & quotation marks omitted). Moreover, the court must examine the evidence "in the light most favorable to the government," *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc), as well as defer to the district court's credibility assessments "inasmuch as the court was in the best position to make such a determination." *United States v. Hill*, 195 F.3d 258, 264-65 (6th Cir. 1999) (citation omitted).

### 1. Whether Ward Voluntarily Consented to the Search of His Hotel Room

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Among its many safeguards, it protects individuals against warrantless searches, except in limited

circumstances, such as when police officers conduct a search with consent. *Florida v. Royer*, 460 U.S. 491, 497 (1983); *accord United States v. Riascos-Suarez*, 73 F.3d 616, 625 (6th Cir. 1996). Where the validity of a search rests upon consent, the State has the burden of proving "by a preponderance of the evidence" through "clear and positive testimony" that the necessary consent was freely and voluntarily obtained. *Riascos-Suarez*, 73 F.3d at 625; *accord Royer*, 460 U.S. at 497. This Court has deemed consent voluntary when it is "unequivocal, specific and intelligently given, [and] uncontaminated by any duress or coercion." *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998) (citation & quotation marks omitted); *accord Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973). To evaluate whether an individual's consent rises to this standard, the court must examine "the totality of the circumstances," including "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *Riascos-Suarez*, 73 F.3d at 625 (citations omitted); *accord Ivy*, 165 F.3d at 402; *see Schneckloth*, 412 U.S. at 248. In this analysis, the district court's findings of fact based upon credibility findings "are generally not subject to reversal upon appellate review." *Ivy*, 165 F.3d at 401 (citation & quotation marks omitted). "Indeed, when there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Id.* at 401-02 (citation & quotation marks omitted).

Citing the same facts that the district court set forth in its order denying his Motion to Suppress, Appellant maintains that he did not voluntarily consent to the search of his hotel room. Appellant Br. 9-14. Among his various critiques of the trial court's decision, he focuses on the fact that the arresting officers did not give him his *Miranda* warnings prior to asking him to sign the

7

consent form. *See* Appellant Br. 12-14. Although the district court briefly addressed this question, *see* R.E. 84 at 10-11, the court believes it should elaborate upon the lower court's reasoning. Ward's *Miranda* argument has no legal foundation, as "the *Miranda* rule protects against violations of the *Self-Incrimination Clause* [of the *Fifth Amendment*], which, in turn, is not implicated by the introduction at trial of physical evidence resulting from *voluntary statements*." *United States v. Patane*, 542 U.S. 630, 634 (2004) (third & fourth emphases added); *see also id.* at 641 ("[A] mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the *Miranda* rule."). With respect to Appellant's other arguments, the court adopts the reasoning of the lower court and affirms its conclusion that Ward voluntarily consented to the search of his room.

**2. Whether Police Lawfully Seized Ward**

The purview of the Fourth Amendment encompasses seizures of the person, including investigatory stops by police officers. *Terry v. Ohio*, 392 U.S. 1, 16-17 (1968). The validity of a seizure under the Fourth Amendment depends on whether it is "reasonable[] based upon the totality of the circumstances." *Hill*, 195 F.3d at 264 (citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)); *see Terry*, 392 U.S. at 19. If an individual consents to a search during an unreasonable, and therefore unlawful, seizure, then the illegal seizure taints the subsequent search and renders the evidence that it produced inadmissible. *See Royer*, 460 U.S. at 507-08.

This Court has established a two-part test to determine the reasonableness of an investigatory stop: First, the court determines *de novo* whether there existed at the time of the stop, in light of all of the facts, "a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." *Caruthers*, 458 F.3d at 464 (citation & quotation marks omitted); *see United States v. Arvizu*, 534

8

U.S. 266, 273 (2002); *Royer*, 460 U.S. at 498 ("[C]ertain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime."). The likelihood of suspected criminal activity need not rise to the level of a preponderance of the evidence, let alone probable cause. *Arvizu*, 534 U.S. at 274. Furthermore, police officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Flores*, 571 F.3d at 544 (citation & quotation marks omitted); *accord Arvizu*, 534 U.S. at 273. Ultimately, however, this analysis constitutes an objective standard: "[W]ould the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry*, 392 U.S. at 21-22 (citations & quotation marks omitted). Second, if the stop was proper, the court must determine "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Caruthers*, 458 F.3d at 464 (citation & quotation marks omitted); *see Terry*, 392 U.S. at 21. For example, a police officer may "take necessary measures to determine whether [a] person is . . . carrying a weapon and to neutralize [a] threat of physical harm" if he reasonably believes that suspect to be armed and dangerous to the officer or others. *Terry*, 392 U.S. at 24.

Ward maintains that Officer Birch impermissibly detained him without reasonable suspicion and that, therefore, the district court erred in allowing the fruits of the subsequent search of his hotel room into evidence at trial. Appellant Br. 14-25. Specifically, he claims that Officer Birch should not have relied on Clemons's statements that there was another gun in Ward's hotel room because the district court later found Clemons "not credible." Appellant Br. 21 (citation & quotation marks

omitted). Ward also insists that the police unreasonably detained him because they "used the most intrusive and threatening means possible," i.e. arrested him at gun point. Appellant Br. 24. In light of the succinct and legally accurate analysis of these issues by the district court, this court adopts its reasoning in full and affirms its finding that the police lawfully seized Ward. *See* R. Doc. 84 at 8-10.

### B. Whether the District Court Correctly Applied the Sentencing Guidelines

Appellant argues that the district court should not have considered a criminal offense that he committed as a juvenile – although he was tried and convicted as an adult, and sentenced to three years in prison – in its calculation of his criminal history category.[2] *See* Appellant Br. 26-27.

This Court reviews a district court's sentence for procedural and substantive reasonableness. *United States v. Dietz*, 577 F.3d 672, 697 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1720 (2010); *see Gall v. United States*, 552 U.S. 38, 46, 51 (2007). In doing so, it reviews the district court's application of the Sentencing Guidelines *de novo* and its findings of fact for clear error. *Dietz*, 577 F.3d at 698 (citation omitted). The procedural reasonableness analysis requires the court to ensure that the trial court "committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51; *see Dietz*, 577 F.3d at 697. Examining a sentence's substantive reasonableness requires the court to determine whether the sentence is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *Dietz*, 577 F.3d

---

[2] Appellant appears to believe incorrectly that his previous conviction boosted his offense level by three points. *See* Appellant Br. 26. The conviction, however, added three points to his criminal history calculation. *See* Appellant's Presentence Investigation Report 4-5, 7.

at 700 (citation & quotation marks omitted); *see Gall*, 552 U.S. at 51.

Ward's claim that the district court should not have used his prior felony conviction to calculate his criminal history category fails. The Sentencing Guidelines explicitly command the trial court to add three points to a defendant's criminal history if he committed an offense as a juvenile but "was convicted as an adult and received a sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.2(d)(1); *see id.* § 4A1.1(a). Appellant's conviction meets these qualifications. *See* Appellant's Presentence Investigation Report 7.

### III. Conclusion

The court AFFIRMS the rulings of the district court.