[Cite as *State v. Jefferson*, 2011-Ohio-4637.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95950**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KENNETH JEFFERSON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-533590

**BEFORE:**   Cooney, J., Stewart, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   September 15, 2011

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Lauren Bell
Norman Schroth
Assistant County Prosecutors
9th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

COLLEEN CONWAY COONEY, J.:

{¶ 1} Defendant-appellant, Kenneth Jefferson ("Jefferson"), appeals his convictions for breaking and entering, theft, vandalism, and possession of criminal tools. We find merit to the appeal and reverse.

{¶ 2} Jefferson was charged with breaking and entering, theft, vandalism, and possession of criminal tools for breaking into a retail store in

Walton Hills. The case proceeded to a jury trial where the following evidence was presented.

{¶ 3} In July 2009, the Geauga County Sheriff's office received several reports of break-ins throughout the county. The sheriff's office communicated the reports to local police agencies so they could work together in the investigation. On August 2, 2009, patrol officer Sean Day ("Day"), of the Chester Township police, stopped Jefferson for suspected driving under the influence. Day determined that Jefferson was not intoxicated but noted that he appeared nervous. Day also observed loose coins in the front passenger seat and a four-way tire iron with a pry bar behind the driver's seat. Based on these facts, Day notified the Sheriff's office that Jefferson may be a suspect, and provided them with Jefferson's license plate number.

{¶ 4} The next day, Detectives Jonathan Bilicic and Matthew Bosworth placed a GPS tracking device on the undercarriage of Jefferson's car while it was parked in a public parking lot at a restaurant in Cleveland Heights. The GPS device transmitted both cellular and satellite signals of the vehicle's location to a computer in the Sheriff's office in real time. Using a GPS-tracking software program, the computer generated "stop reports" that were produced every time Jefferson's car stopped for more than four minutes

and provided precise coordinates of the vehicle's location. The program also maintained a record of all the car's movements for later review by detectives.

{¶ 5} Officer John Paulin ("Paulin"), of the Walton Hills police, testified that he was on basic patrol on the evening of August 7, 2009 when he noticed a number of unusual vehicles. Upon investigation, Day discovered they were unmarked police vehicles. Geauga County detectives showed Paulin the computer in their car that was tracking Jefferson's vehicle. The GPS indicated that Jefferson's vehicle traveled south on Northfield Road, turned onto Krick Road in Walton Hills, and drove around to the back of the Gas House. According to the stop report, Jefferson's vehicle was stopped at the Gas House for nine minutes and 24 seconds, shortly after midnight. The computer generated another stop report at 12:44 a.m. showing that Jefferson's car had stopped again for five minutes and 44 seconds at another business called ADI.

{¶ 6} After Jefferson left the Gas House, Paulin retraced Jefferson's path and discovered that a break-in had occurred at the Gas House. Paulin explained that he had been in the area 15 minutes before Jefferson's vehicle and there were no signs of a break-in at that time. When he returned, however, a glass door was shattered and several drawers, including the cash drawer, were open.

{¶ 7} Shortly thereafter, Lieutenant Niehus of the Geauga County Sheriff's office arrested Jefferson. Jefferson was the sole occupant in the car and had a hat, gloves, cash, rolled coins, and a black, metal cash drawer that belonged to ADI. Although there was no direct evidence such as fingerprints or video surveillance linking Jefferson to the crimes, the stop reports placed Jefferson at the two businesses at the time of the break-ins.

{¶ 8} The court's jury instructions did not include a limiting instruction on "other acts" evidence the State had introduced, and the jury found Jefferson guilty on all counts. The court sentenced him to one year in prison, to be served consecutively to a sentence imposed in another case. This appeal followed.

{¶ 9} Although Jefferson raises five assignments of error, the second assigned error is dispositive. In his second assignment of error, Jefferson argues he was denied his constitutional right to effective assistance of counsel because his trial counsel: (1) did not file a motion to suppress evidence obtained from the warrantless installation and use of a GPS tracking device on his car, and (2) failed to request a limiting instruction on substantial "other acts" evidence.

{¶ 10} To establish a claim of ineffective assistance of counsel, the burden is on the defendant to demonstrate that (1) the performance of

defense counsel was seriously flawed and deficient, and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 495 N.E.2d 407. Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905.

<u>Motion to Suppress Evidence Obtained From GPS</u>

{¶ 11} Failure to file a motion to suppress does not constitute ineffective assistance of counsel, per se. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶208. To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question. *State v. Brown,* 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶65.

{¶ 12} The State argues there was no basis to suppress evidence obtained from the warrantless installation of a GPS device on Jefferson's car because no warrant was required under the Fourth Amendment to the United States Constitution. The State contends there is no binding precedent in this district mandating warrants for the installation of a GPS device in a public parking lot.

{¶ 13} In support of its argument, the State relies on *State v. Johnson*, 190 Ohio App.3d 750, 2010-Ohio-5808, 944 N.E.2d 270, which recently held that GPS surveillance of a suspect during a criminal investigation is not a "search" or "seizure" that would trigger the Fourth Amendment's warrant requirement. In reaching its holding, the *Johnson* court indicated that it was following the United States Supreme Court's decision in *United States v. Knotts* (1983), 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55.

{¶ 14} In *Knotts*, police planted a "beeper" (a radio transmitter) inside a chloroform container that was sold to a suspected drug dealer. The police followed the car in which the chloroform was placed, maintaining contact by using both visual surveillance and a monitor that received beeper signals. The police followed the container across state lines, a trip of almost 100 miles, to Knotts's secluded cabin where he was eventually arrested. Id. at 277. The *Knotts* court concluded that Knotts did not have a reasonable expectation of privacy that would trigger the Fourth Amendment's warrant requirement. The court reasoned:

> "The governmental surveillance conducted by means of the beeper in this case amounted principally to the following of an automobile on public streets and highways. We have commented more than once on the diminished expectation of privacy in an automobile:
>
> "'One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view.'" (Citations omitted.)

Id. at 281.

{¶ 15} Although the *Knotts* court found that the beeper-inside-the-container surveillance did not require a warrant, it expressly noted its concern that the power to conduct public surveillance using beepers might allow "dragnet-type law enforcement." Id. at 284. It also reserved the specific question of whether a warrant would be required in a case involving more intense surveillance techniques and stated that "if such dragnet-type law enforcement practices * * * should eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable." Id. Thus, the Supreme Court left open the possibility of an alternative approach, if warranted under different circumstances.

{¶ 16} In *United States v. Maynard* (C.A.D.C. 2010), 615 F.3d 544, the court found GPS surveillance distinguishable from the beeper-assisted surveillance at issue in *Knotts* and found that GPS surveillance requires a warrant. In *Maynard*, Antoine Jones and Lawrence Maynard were charged with conspiracy to distribute, and possession with intent to distribute, cocaine and cocaine base. Id. at 548-549. At trial, the government used tracking information obtained from a GPS device placed on Jones's vehicle to establish a pattern in his activity. When compared with Jones's cell phone records, the data "paint[ed] a picture of Jones's movements that made the allegation

that he was involved in drug trafficking" credible. Id. at 567. The sequence of Jones's movement revealed more than what a few individual movements could have shown. Id.

**{¶ 17}** Jones argued that the court erred in admitting evidence acquired from the warrantless use of the GPS device for a period of four weeks. Id. at 549, 555. The court agreed with Jones that the prolonged use of GPS surveillance violated his reasonable expectation of privacy and constituted a search under the Fourth Amendment. Id. at 563.

**{¶ 18}** In reaching this conclusion, the court relied on the standard reasonable expectation of privacy analysis set forth in *U.S. v. Katz* (1967), 389 U.S. 347, 360-361, 88 S.Ct. 507, 19 L.Ed.2d 576 (describing a two-part test for defendant's reasonable expectation of privacy as, first, whether the defendant had a subjective expectation of privacy and, second, whether or not the expectation was reasonable). *Maynard* at 555. The court found that although each trip, viewed in isolation, was exposed to the public, the entirety of Jones's movements was not, since "[a] reasonable person does not expect anyone to monitor or retain a record of every time he drives his car, including his origin, route, destination, and each place he stops and how long he stays there; rather, he expects each of those movements to remain 'disconnected

and anonymous.'" Id. at 563, quoting *Nader v. Gen. Motors Corp.* (C.A.N.Y. 1970), 255 N.E.2d 765, 772.

{¶ 19} Finding that, because GPS surveillance reveals more detailed information of one's personal life and affairs than any one person would be expected to have, the court concluded that an expectation of privacy in the aggregate of one's public movements is reasonable. *Maynard* at 558.[1] The court explained:

> "As with the 'mosaic theory' often invoked by the Government in cases involving national security information, 'What may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene.' * * * Prolonged surveillance reveals types of information not revealed by short-term surveillance, such as what a person does repeatedly, what he does not do, and what he does ensemble. These types of information can each reveal more about a person than does any individual trip viewed in isolation. Repeated visits to a church, a gym, a bar, or a bookie tell a story not told by any single visit, as does one's not visiting any of these places over the course of a month. The sequence of a person's movements can reveal still more; a single trip to a gynecologist's office tells little about a woman, but that trip followed a few weeks later by a visit to a baby supply store tells a different story. A person who knows all of another's travels can deduce whether he is a weekly church goer, a heavy drinker, a regular at the gym, an unfaithful husband, an outpatient receiving medical treatment, an associate of particular individuals or political groups — and not just one such fact about a person, but all such facts."

---

[1] The court based its conclusion on two main points. First, the court determined that "unlike one's movements during a single journey, the whole of one's movements over the course of a month is not actually exposed to the public because the likelihood that anyone will observe all those movements is effectively nil." Id. at 558. Second, the court reasoned that the "whole of one's movements is not exposed constructively even though each individual movement is exposed, because that whole reveals more — sometimes a great deal more — than does the sum of its parts." Id.

{¶ 20} In determining whether society is prepared to accept a person's privacy expectation as objectively reasonable, the second prong of the *Katz* test, courts look to the degree of the government's intrusion into a person's privacy. Renee McDonald Hutchins, Tied Up in Knott? GPS Technology and the Fourth Amendment, 55 UCLA L.Rev. 409, 429 (2007).[2] The high degree of intrusion capable with GPS surveillance is evidenced by comparing GPS capabilities with the beeper at issue in *Knotts*. In *Knotts*, the Supreme Court held that a beeper unit, which emitted a periodic electronic beep tone and which enabled officers to follow the suspects' vehicle in their own cars, was a "sense-augmenting device" and did not violate Knotts's reasonable expectation of privacy. A GPS device allows police to remotely monitor every single movement the suspect makes whenever he drives his car.

{¶ 21} The Fourth Amendment issues surrounding GPS surveillance are not new. Both Ohio and federal courts have addressed this issue. In light of the numerous cases on this issue, especially *Maynard*, we conclude that not

---

[2] Citing *U.S. v. Jacobsen* (1984), 466 U.S. 109, 122-23, 104 S.Ct. 1652, 80 L.Ed.2d 85. Comparing *Katz*, which found a high degree of government intrusion, and holding that because the government "listen[ed] to and record[ed] the petitioner's words," it "violated the privacy upon which he justifiably relied while using [a] telephone booth," and thus violated the Fourth Amendment, with *Smith v. Maryland* (1979), 442 U.S. 735, 742, 99 S.Ct. 2577, 61 L.Ed.2d 220, which found a low degree of government intrusion because the surveillance device the authorities used, a pen register, had only "limited capabilities."

only should Jefferson's trial counsel have filed a motion to suppress evidence obtained from the warrantless installation and use of a GPS device on his car, but there is a strong likelihood such motion would have been granted. If granted, the State would have had no evidence to link Jefferson to the crime and he would have been acquitted.

### Limiting Instruction

{¶ 22} Jefferson also claims his trial counsel was ineffective for failing to request a limiting instruction to address the "other acts" evidence that was admitted during the trial. Pursuant to Evid.R. 404(B) and R.C. 2945.59, "[e]vidence of other acts is admissible if (1) there is substantial proof that the alleged 'other acts' were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Lowe*, 69 Ohio St.3d 527, 530, 1994-Ohio-345, 634 N.E.2d 616. "Where evidence has been admitted for a limited purpose * * * the jury should be instructed that such evidence must not be considered by them as any proof whatsoever that the accused did any act alleged in the indictment." *State v. Flonnory* (1992), 31 Ohio St.2d 124, 129, 285 N.E.2d 726, paragraph two of the syllabus.

{¶ 23} The State introduced a substantial amount of "other acts" evidence to prove that Jefferson must have been the same person who

committed the Gas House theft. The "other acts" evidence included testimony regarding the Geauga County Sheriff's on-going investigation of a series of break-ins for which Jefferson had not been convicted. The State also introduced Jefferson's convictions for other offenses including two break-ins and emphasized the "other acts" evidence in both its opening statement and closing argument. The court even admitted into evidence a cash drawer belonging to ADI, which related to a crime for which Jefferson had been convicted but had no relevance to the crimes charged in this case. Yet defense counsel never requested a limiting instruction.

{¶ 24} There was no forensic evidence placing Jefferson at the crime scene. Without forensic evidence linking Jefferson to the crime, there is a reasonable probability that the jury would have acquitted Jefferson if there had been a limiting instruction.

{¶ 25} Therefore, the second assignment of error is sustained.

{¶ 26} Judgement reversed and case remanded to the lower court for further proceedings consistent with this opinion.

{¶ 27} It is ordered that appellant recover of said appellee costs herein taxed.

{¶ 28} The court finds there were reasonable grounds for this appeal.

{¶ 29} It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

{¶ 30} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

{¶ 31} _____

{¶ 32} COLLEEN CONWAY COONEY, JUDGE

{¶ 33} KENNETH A. ROCCO, J., CONCURS;

{¶ 34} MELODY J. STEWART, P.J., DISSENTS (WITH SEPARATE OPINION ATTACHED).

{¶ 35} MELODY J. STEWART, P.J., DISSENTING:

{¶ 36} I agree that defense counsel had a duty to seek suppression of any evidence garnered from the warrantless placement of a GPS tracking device under the first prong of the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. But I cannot agree with the majority's conclusion that such a motion, if filed, would have satisfied the second prong of the *Strickland* test:  that there is a reasonable probability that a motion to suppress evidence would have been granted.  The only Ohio case on point, *State v. Johnson*, 190 Ohio App.3d 750, 2010-Ohio-5808, 944 N.E.2d 270, holds that the placement of a GPS

tracking device was not a search so the police were not required to obtain a warrant before placing the device.

**{¶ 37}** In addition, *United States v. Maynard* (C.A.D.C. 2010), 615 F.3d 544, which the majority relies upon on exclusively in support of its conclusion, is something of an outlier among federal appellate courts. All other circuit courts to consider the issue have upheld the warrantless use of GPS tracking devices. See, e.g., *United States v. Cuevas–Perez* (C.A.7, 2011), 640 F.3d 272; *United States v. Pineda-Moreno* (C.A.9, 2010), 591 F.3d 1212; *United States v. Hernandez* (C.A.5, 2011), ___ F.3d ___; *United States v. Marquez* (C.A.8, 2010), 605 F.3d 604.

**{¶ 38}** The weight of authority contrary to *Maynard* both in Ohio and the federal circuit courts suggests not only that Jefferson failed to show a reasonable probability that a motion to suppress evidence based on the warrantless placement of the GPS device would have been granted, but, in fact, that it was highly unlikely that a motion to suppress would have been granted. Jefferson thus cannot meet the second prong of the *Strickland* test and fails to show that counsel was ineffective. I therefore dissent.