[Cite as *State v. Allen*, 2013-Ohio-4188.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 99289 and 99291**

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## BRIAN ALLEN

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-542893 and CR-544296

**BEFORE:**    Blackmon, J., Boyle, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**    September 26, 2013

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Katherine E. Mullin
Joseph J. Ricotta
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114

Thomas E. Shaughnessy
11510 Buckeye Road
Cleveland, Ohio 44104

PATRICIA ANN BLACKMON, J.:

{¶1}  In this consolidated appeal, appellant, state of Ohio ("the State"), appeals the trial court's decision granting appellee, Brian Allen's ("Allen"), motion to suppress and assigns the following error for our review:

> I. The trial court erred by granting appellee's motion to suppress evidence where officers acted in good faith.  The exclusionary rule is a measure of last resort and evidence should not be suppressed unless the possible benefit of suppression outweighs the substantial social costs.

{¶2}  Having reviewed the record and pertinent law, we affirm the trial court's decision.   The apposite facts follow.

{¶3}  During the months of July through October of 2010, a string of burglaries occurred in the cities of Lyndhurst, Shaker Heights, Maple Heights, South Euclid, and Highland Heights, Ohio.   Many of the burglaries had a distinct pattern and shared similar characteristics.   Specifically, the burglaries took place in residential areas on weekdays when the houses were vacant because the residents were at work.   As a result of the similarities, the police departments of the various municipalities shared information regarding the crimes.

{¶4}  On September 30, 2010, two such burglaries took place in the city of Lyndhurst.   During their subsequent investigation, officers with the Lyndhurst police department learned from a local resident that an unfamiliar male had been walking through the yard of one of the burglarized homes.    The local resident indicated that the unfamiliar male walked around the exterior of the home before backing his car into the

driveway. In addition, the resident indicated that the individual was a thin, black male, approximately 6' 2" tall, and was driving an SUV with an Ohio license plate number, DZU 1675.

{¶5} As a result of this information, the Lyndhurst police determined that the vehicle was registered in the name of the suspect's wife and that the two resided in an apartment complex in Willoughby, Ohio. Lyndhurst police officers went to the complex, conducted surveillance, and confirmed that the vehicle was in the parking lot.

{¶6} On October 4, 2010, Detective James Fiore attached a magnetic global positioning system ("GPS") to the undercarriage of the vehicle. The GPS device allowed the officers to track the vehicle's movement without the need for visual surveillance. Utilizing the GPS device, the officers could precisely determine the exact driveway in which the vehicle was located on a given street and how long it remained in a given driveway.

{¶7} The Lyndhurst police used the GPS device to track the movements of the vehicle for two days. Based on the specific coordinates of the vehicle at a given time, the Lyndhurst police would contact the respective local police department and request assistance in maintaining visual surveillance of the vehicle.

{¶8} On October 6, 2010, while the vehicle was being tracked, the police officers followed the suspect to the area of 5744 East 141st Street in the city of Maple Heights. After a temporary loss of visual surveillance, the police officers observed the vehicle was headed back to the apartment complex in Willoughby, Ohio. The Lyndhurst police

officers checked and received confirmation from the Maple Heights police departments that two homes appeared to have been burglarized within the time frame that the vehicle was present within its jurisdiction.

{¶9} Armed with this information, police officers stopped the vehicle as it entered the parking lot of the apartment complex. After observing numerous electronic devices in plain view, the officer arrested the suspect, and towed the vehicle to the Willoughby Hills police department's evidence garage. Later, the officers obtained search warrants for the suspect's home and vehicle. During execution of the warrants, they discovered electronic equipment believed to have been stolen. Some of the serial numbers matched items that had been reported stolen.

{¶10} Around March 2011, the Cuyahoga County Grand Jury returned a multi-count indictment against Allen, that included charges of burglary and grand theft with notice of prior conviction and repeat violent offender specifications. The grand jury indictment also included charges of vandalism and having weapons under disability.

{¶11} On October 15, 2012, Allen filed a motion to suppress the evidence seized on the grounds that the GPS tracking device was placed on his vehicle without a search warrant. On December 11, 2012, the trial court granted Allen's motion to suppress.

**Motion to Suppress**

{¶12} In the sole assigned error, the State argues the trial court erred when it granted Allen's motion to suppress.

**{¶13}** An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *Euclid v. Jones*, 8th Dist. Cuyahoga No. 97868, 2012-Ohio-3960. The reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Shabazz*, 8th Dist. Cuyahoga No. 97563, 2012-Ohio-3367, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). The application of the law to those facts is subject to de novo review. *State v. Polk*, 8th Dist. Cuyahoga No. 84361, 2005-Ohio-774, ¶ 2.

**{¶14}** We find that the operative facts are not in dispute. Thus, we turn to the question of law presented.

**{¶15}** The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *State v. Calimeno*, 8th Dist. Cuyahoga No. 98376, 2013-Ohio-1177, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Searches conducted outside the judicial process, by officers lacking a prior judicial warrant, are per se unreasonable and subject to a few specifically established exceptions. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

**{¶16}** In *United States v. Jones*, 565 U.S. ____,132 S.Ct. 945, 181 L.Ed.2d 911 (2012), the United States Supreme Court held that a GPS tracking device could not be attached to a suspect's motor vehicle without a warrant because the use of the device results in an unlawful search under the Fourth Amendment.

**{¶17}** In the instant matter, the State does not dispute the applicability of the *Jones* decision to this case. Rather, the State argues that the failure of the Lyndhurst police to obtain a search warrant should not have warranted the exclusion of all evidence obtained through the use of the GPS tracking device. The State maintains that the good-faith exception to the exclusionary rule found in *Davis v. United States*, 564 U.S. ____,131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), should apply and the evidence should not have been excluded.

**{¶18}** *Davis* holds that a police officer's reliance upon binding judicial authority is objectively reasonable, even when that authority is subsequently reversed or overruled. *Id.* The challenge the State faces in arguing for the application of Davis's good-faith exception to the exclusionary rule, is the glaring absence of any binding judicial authority in this jurisdiction that they could have arguably relied on at the time they attached the GPS tracking device to Allen's vehicle.

**{¶19}** A review of the case law in Ohio reveals that only a handful of cases addressed the issue of Fourth Amendment constraints on GPS attachment and tracking. These cases were all decided after the officers attached the GPS to Allen's vehicle.

**{¶20}** The first case, *State v. Johnson*, 190 Ohio App.3d 750, 2010-Ohio-5808, 944 N.E.2d 270 (12th Dist.), involved the denial of a motion to suppress evidence obtained through the attachment and tracking via a GPS device. In *Johnson*, the Twelfth District held that the motion to suppress was properly denied because defendant did not have a reasonable expectation of privacy in the undercarriage of his vehicle and because

placing a GPS device on a vehicle to track the vehicle's whereabouts did not constitute a search or seizure according to the Fourth Amendment and Ohio's Constitution.

**{¶21}** Clearly, had the decision been rendered prior to Detective Fiore attaching the GPS tracking device to Allen's vehicle, instead of two months after, the holding in *Johnson* would have presented persuasive, but non-binding authority on this court. Subsequent appellate history reveals that the Ohio Supreme Court in *State v. Johnson*, 131 Ohio St.3d 301, 2012-Ohio-975, 964 N.E.2d 426, vacated the judgment of the court of appeals and remanded the matter to the trial court for application of *Jones*. Thus, had *Johnson* been decided prior to the search in the instant matter, the State could have argued, in keeping with *Davis*, that they had in good faith relied on *Johnson*, though subsequently overturned.

**{¶22}** The second case, *State v. White*, 5th Dist. Fairfield No. 2010-CA-60, 2011-Ohio-4526, again involved the denial of a motion to suppress evidence obtained through the attachment and tracking via a GPS device. In *White*, decided September 1, 2011, the Fifth District held that the trial court erred by denying the motion to suppress, because placing a GPS tracking device on defendant's vehicle, permitted surveillance of the movements of defendant constantly for an indefinite period of time without any exigent circumstances or showing of probable cause. The court found that this authorized an unreasonable search in violation of the Fourth Amendment and, therefore, was invalid.

**{¶23}** Subsequent appellate history reveals that the Ohio Supreme Court in *State v. White*, 132 Ohio St.3d 67, 2012-Ohio-1983, 969 N.E.2d 243, remanded the matter to the trial court for the application of *Jones*.

**{¶24}** The third case, *State v. Jefferson*, 8th Dist. Cuyahoga No. 2011-Ohio-4637, involved a claim of ineffective assistance of counsel due to the failure to file a motion to suppress evidence obtained through the attachment and tracking via a GPS device. In *Jefferson*, decided September 15, 2011, we held that defendant was denied the effective assistance of counsel because, not only should trial counsel have filed a motion to suppress evidence obtained from the warrantless installation and use of a GPS device on his car, but there was a strong likelihood such a motion would have been granted. In *White*, we reasoned that if granted, the State would have had no evidence to link defendant to the crime, and he would have been acquitted.

**{¶25}** Subsequent appellate history reveals that the Ohio Supreme Court in *State v. Jefferson*, 132 Ohio St.3d 75, 2012-Ohio-1984, 969 N.E.2d 250, again remanded this similar matter to the trial court for the application of *Jones*. We also note that upon remand to the trial court for the application of *Jones*, the State dismissed the charges against the defendant without prejudice.

**{¶26}** The fourth case, *State v. Sullivan*, 5th Dist. Fairfield No. 2010-CA-52, 2011-Ohio-4967, is another from the Fifth District that also involved the denial of a motion to suppress evidence obtained through the attachment and tracking via a GPS device. In *Sullivan*, decided September 23, 2011, the Fifth District held that the trial

court erred when it overruled the motion to suppress because a warrant was required before placing the GPS tracking device on the suspect vehicle and before continuously monitoring the tracking signal.

{¶27} The court reasoned that placement of the GPS tracking device was more than simply a momentary trespass that could be expected from any member of the public. It found that the device, remaining constantly in place, performed a much more substantial search and, therefore, was unreasonable in duration and scope. Consequently, the Fifth District held, as they did in *White*, that the installation of the GPS device was a "search" subject to Fourth Amendment warrant requirements.

{¶28} Subsequent appellate history reveals that the Ohio Supreme Court in *State v. Sullivan*,132 Ohio St.3d 75, 2012-Ohio-1985, 969 N.E.2d 250, again remanded this similar matter to the trial court for the application of *Jones*.

{¶29} A look at the small sample of cases in this jurisdiction that were decided prior to the United States Supreme Court's decision in *Jones*, reveals the unsettled nature of the issue surrounding Fourth Amendment constraints on GPS attachment and tracking. However, it is worth noting that three of the four cases addressing this issue, prior to *Jones*, found that attaching the GPS device was a "search" subject to Fourth Amendment warrant requirements.

{¶30} In the absence of binding appellate precedent in Ohio at the time of the search, coupled with the advent and implication of *Jones*, the State urges that we adopt non-binding judicial precedent from other jurisdictions. Specifically, the State cites

*United States v. Baez*, 878 F. Supp.2d 288, decided July 16, 2012, five months after *Jones*. In *Baez*, a case involving a motion to suppress evidence obtained through the attachment and tracking via a GPS device in a jurisdiction that had not addressed the issue, the court, applying *Davis*, declined to suppress the evidence gathered through that technique, on the grounds that the purposes of the exclusionary rule would not be served. In reaching this decision, the *Baez* court noted:

> For almost the entirety of the time officers were tracking Baez with the GPS device, the three Circuit Courts that had expressly addressed the issue had unanimously concluded that police did not implicate the Fourth Amendment warrant requirement by monitoring a GPS tracking device on a car in public. *United States v. Marquez*, 605 F.3d 604, 609-10 (8th Cir. 2010); *United States v. Pineda-Moreno*, 591 F.3d 1212, 1216-17 (9th Cir. 2010); *United States v. Garcia*, 474 F.3d 994, 997-98 (7th Cir. 2007); *see also United States v. Michael*, 645 F.2d 252 (5th Cir. 1981) (upholding tracking with a beeper attached to a vehicle).

**{¶31}** Although the *Baez* court declined to interpret *Davis* as only preventing suppression where officers face binding appellate precedent that is subsequently overturned, the court specifically stated:

> I do not find suppression on the basis of *Jones* self-executing because *Davis* counsels the exclusionary rule should not be applied if the evidence was gathered at a time when the Courts of Appeals approved the practice at issue and there was no controlling precedent to the contrary within the relevant circuit. *Id.*

**{¶32}** As previously noted, in the instant case, the evidence was gathered at a time when no court of appeals in this jurisdiction had approved the practice of attaching GPS tracking devices, and there was no controlling precedent to the contrary. Thus, we decline to follow *Baez*'s broad reading of *Davis*.

{¶33} Until the United States Supreme Court addresses questions left unanswered by *Jones*, specifically, what is the proper remedy when the governing law is unsettled, we will adopt a strict reading of *Davis* and apply the exclusionary remedy to suppress evidence gathered from a warrantless GPS initiative, because no binding precedent existed in our jurisdiction prior to *Jones*. Other jurisdictions have done the same. *See United States v. Katzin*, E.D. Pa. No. 11-226, 2012 U.S. Dist. LEXIS 65677 (May 9, 2012); *United States v. Lujan*, N.D. Miss. No. 2:11CR11-SA, 2012 U.S. Dist. LEXIS 95804 (July 10, 2012); *United States v. Lee*, E.D. Ky. No. 11-65-ART, 862 F. Supp.2d 560, 2012 U.S. Dist. LEXIS 71204 (May 22, 2012); and *United States v. Robinson*, E.D. Mo. No. S2-4:11CR00361AGF(DDN), 903 F. Supp. 2d 766, 2012 U.S. Dist. LEXIS 147793 (Oct. 15, 2012).

{¶34} The risk of institutionalizing a policy of permitting reliance on non-binding authority, particularly in the face of other, contrary non-binding authority, at least borders on being categorized as systemic negligence. *Katzin*, 2012 U.S. Dist. LEXIS 65677. Indeed, allowing the government the shelter of the good-faith exception in this case would encourage law enforcement to beg forgiveness, rather than ask permission, in ambiguous situations involving basic civil rights. *Id*.

{¶35} Faced with the lack of binding appellate precedence in Ohio, the trial court granted Allen's motion to suppress and issued the following entry, stated in pertinent part as follows:

> Here, the violation occurred before *Jones* or a ruling in Ohio or the Sixth Circuit on the issue of Fourth Amendment constraints on GPS attachment

and tracking; the first case to address this issue, *State v. Johnson*, 190 Ohio App.3d 750 (12th Dist.2010), was decided in late November, almost two months after the events at issue. Thus, the State has urged that the police reasonably relied, in the absence of binding precedent, on persuasive precedent from other jurisdictions. The State claims this should be sufficient to satisfy the good-faith exception. This argument did not sway the second district in *State v. Henry*, No. 11-CR-829 (Ohio 2d Dist.2012), the first case in Ohio in which an Ohio appellate court applied the *Jones* rule, and this Court can find nothing to distinguish this case.

In *Henry*, police investigators placed a GPS on the defendant's vehicle without a warrant and the tracking information from the GPS led to the defendant's arrest in connection with a number of thefts. *Id*. at 1-2. The State in that case made the same argument for the *Davis* exception because police relied on persuasive precedent. In reversing the trial judge's denial of the defendant's motion to suppress, the Second District found that the good-faith exception in *Davis* "has no application in a situation, like the one before us, where the jurisdiction in which the search was conducted has no binding judicial authority upholding the search." *Id*. at 4. There is nothing to suggest a different outcome here. Journal Entry December 11, 2012.

{¶36} The trial court's decision is well reasoned. Here, like *Henry*, we, nor any other Ohio appellate court district had addressed the "GPS" issue prior to the release of the United States Supreme Court's decision in *Jones*. The same is true of the Ohio Supreme Court and the Sixth Circuit Court of Appeals. Thus, there was no binding precedent in our jurisdiction concluding that the employment of a GPS tracking device does not constitute a "search," making a warrant unnecessary.

{¶37} We now turn to the Lake County, Ohio case against Allen, which involves the same operative facts. The State, through the Lake County Prosecutor's Office, prosecuted and obtained convictions against Allen for the related burglaries in Lake County. Allen appealed his convictions, asserting that counsel's failure to file a motion

to suppress evidence obtained with the warrantless use of a GPS device amounted to ineffective assistance.

{¶38} On appeal, in *State v. Allen*, 11th Dist. Lake No. 2011-L-157, 2013-Ohio-434, the Eleventh District, in reversing Allen's convictions followed the logic on display by the Second District in *Henry*. In *Allen*, the Eleventh District held counsel had a duty to raise the issue of the warrantless use of a GPS in a motion to suppress because, at trial, (1) no binding precedent required its denial, so the motion would not have been futile, and (2) there was no strategic basis for not filing it, so counsel's performance fell below an objective standard of reasonableness.

{¶39} The State filed a notice of appeal and a motion to stay the Eleventh District's decision in *Allen*. However, the Ohio Supreme Court declined jurisdiction. *See State v. Allen*, 135 Ohio St.3d 1447, 2013-Ohio-2062, 987.N.E.2d 703.

{¶40} Further, although the State urges an opposing view, we join with the Second and Eleventh Districts, who have now spoken on the issue, to underscore that the good-faith exception to the exclusionary rule is not available if there was no binding precedent in the jurisdiction. Thus, we decline to adopt the position the State urges that we broadly interpret *Davis* to allow an exception when non-binding precedence from other jurisdictions exist.

{¶41} Finally, the State argues that the goals of the exclusionary rule would not be met in the instant case because suppression comes at a substantial social cost. The exclusionary rule is a "prudential doctrine" that was created by the United States Supreme

Court to "compel respect for the constitutional guaranty" expressed in the Fourth Amendment. *Davis*, citing *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The purpose of the exclusionary rule is to deter future Fourth Amendment violations. *Davis* at 2426. "Where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly * * * unwarranted.'" *Id.* at 2426-2427, quoting *United States v. Janis*, 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Because of the substantial social costs generated by the exclusionary rule, the deterrence benefits of suppression must outweigh its heavy costs. *Davis* at 2427.

> When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. * * * But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful * * * or when their conduct involves only simply "isolated" negligence * * * the "deterrence rationale loses much of its force" and exclusion cannot "pay its way."

*Id.* at 2427-2428, quoting *United States v. Leon*, 468 U.S. 897, 908-909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *Herring v. United States*, 555 U.S. 135, 143-144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).

{¶42} The State argues there is no evidence demonstrating that the police acted with deliberate, reckless, or grossly negligent disregard for Allen's Fourth Amendment rights. In support, the State claims the Lyndhurst detectives acted in good faith by diligently inquiring of two Cuyahoga County Prosecutors about the necessity of a warrant before placing the GPS tracking device on the vehicle. However, had a reckless, wanton analysis been necessary to resolve the instant matter, the detectives' actions, subsequent

to inquiring about the necessity of a warrant, would have undermined the State's argument.

{¶43} It has not been lost on this court that in addition to not obtaining a warrant prior to attaching the GPS tracking device to Allen's vehicle, the Lyndhurst detectives crossed into another jurisdiction by going into another county, under the cover of night, and entered a gated community to surreptitiously attach the device at issue. Thus, had a reckless wanton analysis been necessary, instead of *Davis's* application in the wake of *Jones*, it is arguably that the State's good-faith argument would have been tarnished by the procedure the Lyndhurst detectives employed to attach the GPS tracking device to Allen's vehicle.

{¶44} For the foregoing reasons, the trial court did not err when it granted Allen's motions to suppress evidence obtained by attaching a GPS tracking device to Allen's vehicle without first obtaining a warrant. Accordingly, we overrule the State's sole assigned error.

{¶45} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PATRICIA ANN BLACKMON, JUDGE

MARY J. BOYLE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR