[Cite as *State v. Johnson*, 2013-Ohio-4865.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                              :

    Plaintiff-Appellee,                    :            CASE NO.   CA2012-11-235

                                      :            O P I N I O N
  - vs -                                                            11/4/2013

                                        :

SUDINIA D. JOHNSON,                        :

    Defendant-Appellant.                 :


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2008-11-1919


Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster, Jr., Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

William R. Gallagher, The Citadel, 114 East Eighth Street, Cincinnati, Ohio 45202, for defendant-appellant


     **HENDRICKSON, P.J.**

     **{¶ 1}** Defendant-appellant, Sudinia Johnson, appeals from his convictions for trafficking in cocaine and possession of cocaine following his plea of no contest in the Butler County Court of Common Pleas.  Johnson argues that the trial court erred in overruling his motion to suppress evidence obtained through the warrantless attachment and subsequent use of a GPS tracking device on the exterior of his vehicle.  Because suppression of the

evidence would not yield appreciable deterrence and law enforcement acted with an objectively reasonable good faith belief that their conduct was lawful, we find that the trial court did not err in denying Johnson's motion to suppress. For the reasons set forth below, Johnson's convictions are affirmed.

## I. FACTUAL BACKGROUND

{¶ 2} The following facts were originally set forth in *State v. Johnson*, 190 Ohio App.3d 750, 2010-Ohio-5808 (12th Dist.) (hereafter, *Johnson I*), and are hereby incorporated in full:

> Detective Mike Hackney, a supervisor in the drug-and-vice-investigations unit for the Butler County Sheriff's Office, received information from three separate confidential informants that Johnson was trafficking in cocaine. Specifically, Hackney was informed that Johnson had recently dispersed multiple kilos of cocaine, that Johnson was preparing to acquire seven more kilos, and that Johnson moved the cocaine in a van. Hackney testified at the motion-to-suppress hearing that he had been familiar with Johnson's possessing and driving a white Chevy van at the time the informants gave him the information.
>
> [On October 23, 2008] Hackney and two other agents performed a trash pull at Johnson's residence, and while there, they attached a GPS device to Johnson's van, which was parked on the east side of the road opposite the residences. Hackney testified that he attached the GPS device to the metal portion of the undercarriage of the van. Hackney stated that the device was "no bigger than a pager" and was encased in a magnetic case so that the device did not require any hard wiring into the van's electrical systems.
>
> * * *
>
> After attaching the device, the agents intermittently tracked the GPS through a secured website. The Tuesday after installation, the GPS indicated that the van was located in a shopping center around Cook County, Illinois. Hackney began making arrangements with law enforcement in Chicago to verify the location of Johnson's van. * * * Rudy Medellin, * * * a retired Immigration and Customs officer, * * * agreed to go to the shopping center and verify the location of Johnson's van.
>
> Medellin arrived at the Chicago shopping center and confirmed

the van's location and that the van matched the description and license-plate number of the van Johnson was known to possess and drive. * * * Medellin then followed the van from the shopping center to a residence in the Chicago area, where he saw * * * two men exit the van and enter the residence.

Medellin saw one man, later identified as Johnson, exit the residence carrying a package or box, and enter the van. Medellin saw the other man, later identified as Otis Kelly, drive away in a Ford that had Ohio plates. Medellin followed Johnson's van and the Ford until they reached the Butler County area and communicated with Hackney via cell phone during the surveillance.

Hackney continued to contact law-enforcement officials throughout Ohio, readying them to assist once Johnson and Kelly entered Ohio from Indiana. Hackney drove toward Cincinnati and, after coming upon Johnson's van, began to follow him. Hackney advised law-enforcement officers to stop the van and Ford "if they were able to find probable cause to make a stop." Deputy Daren Rhoads, a canine handler with the Butler County Sheriff's Office, initiated a stop after Johnson made a marked-lane violation.

* * *

By the time Rhoads initiated the traffic stop, other officers were also in the position to offer back-up. Officers directed Johnson to exit his vehicle and then escorted him onto the sidewalk so that Rhoads could deploy his canine partner. The canine made a passive response on the driver's side door and on the passenger's side sliding door. After the canine walk-around, Johnson gave his consent to have the van searched.

Rhoads and other officers performed a preliminary sweep of Johnson's van for narcotics, but did not find any drugs or related paraphernalia in the vehicle. During this time, police vehicles and Johnson's van were situated on the road. After the initial search, officers moved Johnson's van approximately one-tenth of a mile to the location where police had pulled over the Ford driven by Otis Kelly. Officers there had also deployed two canine units around Kelly's Ford, and the canines detected the presence of narcotics. The officers ultimately located seven kilos of cocaine within a hidden compartment in the Ford's trunk and arrested Kelly for possession of cocaine. (Footnote omitted).

Once the van was situated at the second location, Rhoads continued his search with the help of an interdiction officer for

the Ohio State Highway Patrol. The two concentrated on the undercarriage of the van and looked for any hidden compartments that Rhoads may have missed during his preliminary search. No drugs were recovered from the van.

\* \* \* Officers later seized Johnson's keys and discovered that one of the keys on Johnson's key ring opened the hidden compartment in the Ford that contained the seven kilos of cocaine seized from Kelly's vehicle. [The evidence was seized and Johnson was arrested.]

*Johnson I* at ¶ 2-13.

{¶ 3} Johnson was indicted in November 2008 on one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2), one count of possession of cocaine in violation of R.C. 2925.11, and one count of having weapons while under disability in violation of R.C. 2923.13(A)(3). Following his indictment, Johnson filed numerous motions to suppress evidence obtained by law enforcement as well as a motion to sever the charge of having weapons while under disability from the trafficking and possession charges. Johnson's motion to sever was granted, a bench trial was held, and Johnson was acquitted of having weapons while under disability.

{¶ 4} An evidentiary hearing on Johnson's motions to suppress was held on March 3, 2009. At this time, the trial court considered Johnson's "Supplemental Motion to Suppress as to GPS Issue," in which Johnson sought to suppress all evidence obtained "directly or indirectly" from searches and seizures of himself and his property as "said searches and seizures were conducted with the unmonitored, unbridled use of a GPS device" in violation of his constitutional rights. The trial court denied Johnson's motion to suppress as to the GPS issue. Thereafter, Johnson entered a plea of no-contest to the trafficking and possession charges, and he was sentenced to 15 years in prison.

{¶ 5} Johnson appealed, arguing that "[t]he trial court erred in denying the motion to suppres[s] when it ruled police did not need a search warrant to place a GPS tracking device

- 4 -

on Mr. Johnson's car." *Johnson I*, 2010-Ohio-5808 at ¶ 18. In *Johnson I*, this court concluded that Johnson did not have a reasonable expectation of privacy in the undercarriage of his vehicle and that the placement and subsequent use of the GPS device to track the vehicle's whereabouts did not constitute a search or seizure under either the Fourth Amendment to the United States Constitution or Section 14, Article I of Ohio's Constitution. *Id.* at ¶ 18-47.

{¶ 6} Johnson appealed to the Ohio Supreme Court, which accepted review of the case. *State v. Johnson*, 128 Ohio St.3d 1425, 2011-Ohio-1049. While the matter was pending before the Ohio Supreme Court, the United States Supreme Court issued a decision in *United States v. Jones*, __ U.S. __, 132 S.Ct. 945, 948 (2012), holding that the government's "installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'" within the context of the Fourth Amendment. (Footnote omitted.) Thereafter, the Ohio Supreme Court vacated our holding in *Johnson I*, and remanded the case back to the trial court for application of *Jones. State v. Johnson*, 131 Ohio St.3d 301, 2012-Ohio-975, ¶ 1.

{¶ 7} The trial court permitted both parties to file supplemental briefs addressing the impact that *Jones* had on Johnson's motion to suppress. At a hearing on September 12, 2012, Johnson and the state stipulated to the trial court's consideration of the transcript and exhibits from the March 3, 2009 evidentiary hearing. The parties further agreed that no additional evidence was necessary for the trial court to rule on the motion to suppress. At a hearing held on October 19, 2012, the trial court issued a decision denying Johnson's motion to suppress. Although the court found a clear violation of Johnson's Fourth Amendment right in the warrantless placement of the GPS device on Johnson's vehicle, the court concluded that exclusion of the evidence obtained from the use of the GPS device was not warranted under the facts of the case. Relying on *Davis v. United States*, __ U.S. __, 131 S.Ct. 2419

(2011), the trial court concluded that "the deterrence benefit exclusion in this case of non-culpable, non-flagrant police conduct does not outweigh the heavy costs of exclusion to society and the judicial system. * * * The Court finds that the officers acted in good faith * * * and the evidence will be admitted at trial."

{¶ 8} Following the denial of his motion to suppress, Johnson entered a plea of no-contest to the trafficking and possession charges. The possession charge was merged with the trafficking charge for sentencing purposes, and Johnson was sentenced to ten years in prison.

{¶ 9} Johnson now appeals, challenging the trial court's denial of his motion to suppress.

## II. ANALYSIS

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED WHEN IT FAILED TO APPLY THE EXCLUSIONARY RULE AND SUPPRESS ALL EVIDENCE AND INFORMATION OBTAINED BY POLICE AFTER IT DETERMINED A WARRANT WAS NECESSARY TO PLACE A GPS DEVICE ON MR. JOHNSON'S CAR IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES.

{¶ 12} In his sole assignment of error, Johnson argues the trial court erred in denying his motion to suppress on the basis of the "good faith exception" to the exclusionary rule. Johnson argues that the good faith exception set forth in *Davis* is limited in application to those situations in which there is a "binding appellate procedure authoriz[ing] a particular police practice." As there was no binding case law in effect at the time the Butler County Sheriff's Office placed the GPS device on his car, Johnson argues that the police were not acting in good faith. Johnson, therefore, argues that *Davis* and *Jones* require suppression of

the evidence obtained through the use of the GPS device.

{¶ 13} The state argues for a broader reading of *Davis.* The state contends that Johnson's motion to suppress should be denied on the basis of the good faith doctrine as law enforcement acted with an objectively reasonable good faith belief that their conduct in attaching and monitoring the GPS device without the authorization of a warrant was lawful. The state argues that "binding" judicial precedent is not necessary under *Davis*' good faith exception to the exclusionary rule. Rather, the state contends, the focus under *Davis* is on the culpability of the police. Because officers from the Butler County Sheriff's Office did not act with a deliberate, reckless, or grossly negligent disregard for Johnson's Fourth Amendment rights, the state argues that exclusion of the evidence is not required under the facts of this case.

## A. Standard of Review

{¶ 14} Our review of a trial court's denial of a motion to suppress presents a mixed question of law and fact. *State v. Cochran,* 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis,* 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

## B. The Exclusionary Rule and the Good Faith Doctrine

{¶ 15} The exclusionary rule is a "prudential doctrine" that was created by the United States Supreme Court to "compel respect for the constitutional guaranty" expressed in the

Fourth Amendment. *Davis*, 131 S.Ct. at 2426, citing *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437 (1960). The Supreme Court has "repeatedly held" that the exclusionary rule's "sole purpose * * * is to deter future Fourth Amendment violations." *Id.* Courts should not "reflexive[ly]" apply the exclusionary rule, but rather, should limit application of the doctrine "to situations in which this purpose [of deterring future Fourth Amendment violations] is 'thought most efficaciously served.'" *Id.*, quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613 (1974). Accordingly, "[w]here suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly * * * unwarranted.'" *Id.* at 2426-2427, quoting *United States v. Janis,* 428 U.S. 433, 454, 96 S.Ct. 3021 (1976).

{¶ 16} Deterrent value alone, however, is insufficient for exclusion because any analysis must also "account for the substantial social costs generated by the rule," since exclusion "exacts a heavy toll on both the judicial system and society at large." (Internal citations omitted.) *Id.* at 2427. As suppression "almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence," the "bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment." *Id.* "[S]ociety must swallow this bitter pill * * * *only* as a 'last resort.'" (Emphasis added.) *Id.*, quoting *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S.C.t 2159 (2006). Accordingly, "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Id.*

{¶ 17} "[T]he deterrence benefits of exclusion 'vary with the culpability of the law enforcement conduct' at issue." *Id.*, quoting *Herring v. United States*, 555 U.S. 135, 143, 129 S.Ct. 695 (2009). "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. * * * But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful * * * or when their conduct involves only simply

'isolated' negligence * * * the 'deterrence rationale loses much of its force' and exclusion cannot 'pay its way.'" *Id.* at 2427-2428, quoting *United States v. Leon,* 468 U.S. 897, 908-909, 104 S.Ct. 3405 (1984) and *Herring* at 143-144.

{¶ 18} In *Davis*, the petitioner, Davis, sought to exclude evidence obtained in a search following a routine traffic stop. *Id.* at 2425. After Davis had been arrested, placed in handcuffs, and put in the back of a patrol car, the police searched the vehicle Davis had been riding in and found a revolver. *Id.* At the time the search was conducted, officers were acting in compliance with *New York v. Belton*, 453 U.S. 454, 459-460, 101 S.Ct. 2860 (1981), which held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile." Davis was convicted on one count of possession of a firearm, but he appealed his conviction arguing that the search was unconstitutional. *Davis* at 2426. While his appeal was pending, the United States Supreme Court adopted a new test in *Arizona v. Gant*, 556 U.S. 332, 343, 129 S.Ct. 1710 (2009), holding that an automobile search incident to a recent occupant's arrest is constitutional if (1) the arrestee is within reaching distance of the vehicle during the search or (2) the police have reason to believe that the vehicle contains evidence relevant to the crime of arrest.

{¶ 19} The issue the United States Supreme Court faced in *Davis* was whether to apply the exclusionary rule to suppress evidence obtained by police officers who, at the time of the search, were acting in compliance with binding precedent that was later overruled. *Davis* at 2423. The Court ultimately concluded that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Id.* at 2423-2424. The Court's holding was predicated on a determination that "suppression would do nothing to deter police misconduct in these circumstances" and "would come at a high cost to both the truth and the public safety." *Id.* at 2423.

**C. Application of the Good Faith Doctrine to GPS Cases**

{¶ 20} Following the Supreme Court's decision in *Jones*, courts across the country have addressed the propriety of applying *Davis* to cases in which GPS monitoring began before *Jones* was decided. "These decisions may be generally divided in two groups: (1) [courts] with pre-*Jones* binding appellate precedent sanctioning the warrantless installation and use of GPS devices, and (2) [courts] with no such binding appellate authority." *United States v. Guyton*, E.D.La. No. 11-271, 2013 WL 55837, *3 (Jan. 3, 2013).

{¶ 21} Courts falling within the first category have had no problem applying *Davis* to deny the suppression of evidence. *See State v. Rich*, 12th Dist. Butler No. CA2012-03-044, 2013-Ohio-857 (relying on *Johnson I* as binding appellate precedent within the Twelfth District Court of Appeals); *United States v. Smith*, D.Nev. No. 2:11-cr-00058-GMN-CWH, 2012 WL 4898652 (Oct. 15, 2012) (relying on binding appellate precedent in the Ninth Circuit); *United States v. Amaya*, 853 F. Supp.2d 818 (N.D.Iowa 2012) (relying on binding appellate precedent in the Eighth Circuit); *United States v. Nelson*, S.D.Ga. No. CR612-005, 2012 WL 3052914 (July 25, 2012) (relying on binding appellate precedent in the Eleventh Circuit).

{¶ 22} Courts falling within the second category, however, are divided on how *Davis* should be applied. Some courts have construed *Davis* narrowly and hold that the good faith exception is inapplicable in the absence of binding appellate precedent. *See State v. Allen*, 8th Dist. Cuyahoga Nos. 99289 and 99291, 2013-Ohio-4188; *State v. Allen*, 11th Dist. Lake No. 2011-L-157, 2013-Ohio-434; *State v. Henry*, 2d Dist. Montgomery No. 11-CR-829, 2012-Ohio-4748; *United States v. Katzin*, E.D.Pa. No. 11-226, 2012 WL 1646894 (May 9, 2012); *United States v. Lee*, 862 F.Supp.2d 560 (E.D.Ky.2012); *United States v. Lujan*, N.D.Miss. No. 2:11CR11-SA, 2012 WL 2861546 (July 11, 2012). Other courts interpret *Davis* to require

a case-by-case inquiry into whether law enforcement acted with an objectively reasonable good faith belief that their conduct was lawful. *See Guyton*, 2013 WL 55837; *United States v. Oladosu*, 887 F.Supp.2d 437 (D.R.I.2012); *United States v. Baez*, 878 F.Supp.2d 288 (D.Mass. 2012); *United States v. Leon*, 856 F. Supp.2d 1188 (D.Haw.2012); *United States v. Rose*, 914 F.Supp.2d 15 (D.Mass.2012); *United States v. Lopez*, 895 F.Supp.2d 592 (D.Del.2012).

{¶ 23} The question before this court is whether the *Davis* good faith exception applies here, where prior to our decision in *Johnson I* there was no Ohio Supreme Court or Twelfth District case law authorizing the warrantless installation and monitoring of a GPS device. We believe that a case-by-case approach examining the culpability and conduct of law enforcement is more appropriate given the preference expressed in *Davis* for a cost-benefit analysis in exclusion cases as opposed to a "reflexive" application of the doctrine to all cases involving a Fourth Amendment violation. *Davis*, 131 S.Ct. at 2427 ("We abandoned the old, 'reflexive' application of the [exclusionary] doctrine, and imposed a more rigorous weighing of its costs and deterrence benefits").

{¶ 24} In analyzing whether the Butler County Sheriff's Office acted with a "deliberate," "reckless," or "grossly negligent" disregard for Johnson's Fourth Amendment rights, we find that in addition to examining the specific actions taken by Detective Hackney and the sheriff's office, it is also necessary to examine the legal landscape as of October 23, 2008, the date the GPS device was placed on Johnson's vehicle.

{¶ 25} At the March 3, 2009 hearing, Hackney testified that the GPS device was placed on Johnson's vehicle without first attempting to obtain a warrant. Hackney explained that he had previously installed GPS devices on suspects' vehicles in other cases without having obtained a warrant. Prior to placing such GPS devices, Hackney had consulted with

assistant prosecutor Dave Kash about the legality of using GPS devices.[1] Hackney further stated that he had talked with his fellow officers, his supervisors, and with other law enforcement agencies about the use of GPS devices. He explained that "it was kind of common knowledge among other drug units or talking to other drug units that as long as the GPS is not hard wired, as long as it is placed on - - in a public area, removed in a public area, it is basically a tool or an extension of surveillance."

{¶ 26} Hackney's belief that a warrant was unnecessary was not unfounded given the legal landscape that existed at the time the GPS device was placed on Johnson's car. As of October 23, 2008, no court had ruled that the warrantless installation and monitoring of GPS devices on vehicles that remained on public roadways was a violation of the Fourth Amendment. Courts that had considered the issue of electronic monitoring determined that the United States Supreme Court's decision in *United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081 (1983) controlled. In *Knotts*, the Supreme Court held that there was no Fourth Amendment violation where officers used an electronic beeper, which had been hidden inside of a chemical container prior to the container coming into the defendant's possession, to track a defendant's movements as he traveled on public roads with the container in his car. The Supreme Court held that a defendant "traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Id.* at 281.[2]

{¶ 27} Subsequent to the United States Supreme Court's decision in *Knotts,* the Ninth Circuit determined in *United States v. McIver*, 186 F.3d 1119, 1126-1127 (9th Cir.1999), that

---

1. At the March 3, 2009 hearing, Hackney specified that he had talked to Dave Kash about a "[y]ear and a half [to] two years" ago about the legality of using a GPS device without a warrant.

2. *Compare United States v. Knotts,* 460 U.S. 276, 103 S.Ct. 1081 (1983), *with United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296 (1984), where the Supreme Court determined that the monitoring of an electronic beeper in a *private* residence constitutes a search requiring a warrant as the location of the beeper was not open to visual surveillance.

the placement of a magnetic electronic tracking device on the undercarriage of a vehicle did not violate the Fourth Amendment. In *McIver*, law enforcement placed a magnetized tracking device on the undercarriage of the defendant's vehicle while the vehicle was parked in the defendant's driveway. *Id.* at 1123. The transmitter sent a signal to a monitoring unit used by police officers that informed officers when the transmitter was nearby and in what direction the transmitter was traveling. *Id.* The defendant challenged the constitutionality of using the tracking device, arguing the use of the device constituted both an illegal search and seizure. *Id.* at 1126. The Ninth Circuit disagreed, finding that no search occurred as the defendant failed to produce evidence demonstrating that he intended to shield the undercarriage of his vehicle from inspection by others or that placing the device permitted officers to pry into a hidden or enclosed area. *Id.* at 1127. The court further concluded that a seizure had not occurred as the defendant was not deprived of dominion and control of his vehicle and there was no evidence that use of the tracking device caused any damage to the electric components of the vehicle. *Id.*

{¶ 28} Thereafter, in 2007, the Seventh Circuit issued a decision in *United States v. Garcia*, 474 F.3d 994 (7th Cir.2007), addressing the warrantless placement and subsequent monitoring of a GPS device on a defendant's motor vehicle. In *Garcia,* the Seventh Circuit found the use of GPS devices analogous to the Supreme Court's sanction of beeper technology in *Knotts*. *Id.* at 996-997. The court concluded that the Fourth Amendment "cannot sensibly be read to mean that police shall be no more efficient in the twenty-first century than they were in the eighteenth" and concluded that scientific enhancement allowing police to monitor a suspect on a pubic road was not a search requiring the authorization of a warrant. *Id.* at 998.

{¶ 29} Following the placement of the GPS device on Johnson's vehicle and the Seventh Circuit's decision in *Garcia*, numerous other courts upheld the warrantless

- 13 -

attachment and monitoring of a GPS device on a suspect's vehicle prior to the United States Supreme Court's decision in *Jones*. *See United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir.2010); *United States v. Marquez*, 605 F.3d 604 (8th Cir.2010); *United States v. Hernandez*, 647 F.3d 216 (5th Cir.2011). It was not until August 6, 2010, more than 21 months after the GPS device was placed on Johnson's vehicle, that the D.C. Circuit Court broke with the majority of other jurisdictions by holding that the use of a GPS tracking device for 28 days violated a defendant's reasonable expectation of privacy and was a violation of the defendant's Fourth Amendment rights. *United States v. Maynard*, 615 F.3d 544 (D.C.Cir.2010).

{¶ 30} Given that, at the time Hackney attached the GPS device to Johnson's car, the United States Supreme Court had sanctioned the use of beeper technology without a warrant in *Knotts*, at least one circuit court had applied the rationale expressed in *Knotts* and determined that the warrantless placement and subsequent monitoring of a GPS device on a vehicle was not a violation of a defendant's Fourth Amendment rights, and Hackney acted only after consulting with fellow officers, other law enforcement agencies, and a prosecutor, we find that the Butler County Sheriff's Office acted "with an objectively 'reasonable good-faith belief' that their conduct [was] lawful." *Davis*, 131 S.Ct. at 2427, quoting *Leon*, 468 U.S. at 909. Taking into account the steps taken by law enforcement and the legal landscape that existed at the time the GPS device was attached to Johnson's vehicle, we find that law enforcement did not exhibit a deliberate, reckless, or grossly negligent disregard for Johnson's Fourth Amendment rights in attaching and monitoring the GPS device without the authorization of a warrant. Suppression under the facts of this case would therefore fail to yield appreciable deterrence. As such, the deterrence value does not outweigh the social costs exacted by application of the exclusionary rule, which would require the court "to ignore reliable, trustworthy evidence bearing on guilt or innocence." *Id.*

{¶ 31} We therefore find that the good faith exception to the exclusionary rule applies in this case. The evidence obtained from the attachment and subsequent use of the GPS device is not subject to exclusion.

## III. CONCLUSION

{¶ 32} Having found that suppression of the evidence would not yield appreciable deterrence and that law enforcement acted with an objectively reasonable good faith belief that their conduct was lawful, we find no error in the trial court's denial of Johnson's motion to suppress.

{¶ 33} Johnson's sole assignment of error is overruled.

{¶ 34} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.