[Cite as *State v. Spivey*, 2013-Ohio-5581.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99694**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# LLOYD SPIVEY

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-563850

**BEFORE:** Jones, P.J., S. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** December 19, 2013

**ATTORNEY FOR APPELLANT**

Michaele Tyner
Rockside Plaza, Suite 321
1440 Rockside Road
Parma, Ohio 44134


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Mary Weston
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant Lloyd Spivey appeals the trial court's judgment denying his motion to suppress. We affirm.

## I. Procedural History

{¶2} In July 2012, Spivey was charged with improperly handling firearms in a motor vehicle and carrying concealed weapons. Both charges contained forfeiture specifications.

{¶3} Spivey filed a motion to suppress and the trial court held a hearing on the motion. At the conclusion of the hearing, the motion was denied. Spivey pleaded no contest to the charges, and the trial court found him guilty. The trial court sentenced him to five years of community control sanctions.

## II. Facts

{¶4} The incident that gave rise to the charges occurred on June 15, 2012, in the city of Garfield Heights. On that date, while on patrol duty, Officers Patrick Hace and Richard Fogle saw a car being operated by Spivey with a large crack in the windshield. The officers followed the car, which made a left turn without signaling. The car then made a "quick, evasive" turn into a residential driveway. The officers saw that there were numerous people in the car and, therefore, pulled into the driveway behind it. The officers approached the car, one on each side.

{¶5} The officers testified that the time frame from when they first saw the vehicle to when they pulled in behind was "very short" and did not allow them to run the plates

on the car. Further, they deemed the way the car was driven so quickly into the driveway to be a "little suspicious" and, therefore, were more interested in approaching the vehicle than in running the plates.

{¶6} Officer Hace advised Spivey of the reason for the stop, and asked for identification and proof of insurance. Codefendant Ahmed Saleem was the front seat passenger, and there were three back-seat passengers, one of whom was a juvenile. All the passengers were also asked for their identifying information. The officers went back to their cruiser to call the information into dispatch.

{¶7} While in the cruiser, Officer Fogle noticed that one of the backseat passengers was opening the door and it looked like he was going to "bolt." The officers, therefore, approached the detained vehicle again. When they approached the second time, they had been able to identify all of the passengers except the juvenile; dispatch had informed them the information he had given was incorrect.

{¶8} Because they were unable to identify the juvenile, the officers requested that he exit the vehicle and told him he was going to sit in the police cruiser until his identity could be determined. Prior to placing him in the cruiser, the police conducted a pat-down search, during which they recovered numerous shotgun shells in his pants pocket.

{¶9} After the discovery of the shells on the juvenile, Officer Fogle questioned Spivey as to whether he knew why the juvenile had shotgun shells; Spivey said he did not know. Officer Fogle asked Spivey if there was anything illegal in the car, and Spivey

said no.  The officer then asked Spivey if he could search the car.  Spivey said that was "fine."  Officer Fogle testified that he was not displaying a show of force, and Spivey was acting cooperatively.  At that time, with the exception of the juvenile, the other passengers were still in the car.

{¶10} The other occupants were removed from the car so that the search could be conducted.  Officer Hace testified that Saleem was placed in a police cruiser, where he was able to see the search taking place.  Saleem never told the police that the car was his; nor did he object to the search.

{¶11} The following items were recovered from the search:  (1) a shotgun shell on the back floor area by where the juvenile had been sitting, (2) two handguns and a box of ammunition from the glove compartment, and (3) a shotgun, mask, and gloves in the trunk.

{¶12} After the search, the officers learned that the vehicle belonged to codefendant Saleem.  They also learned that the driveway where Spivey had pulled into was the driveway of his aunt.

{¶13} Spivey was transported to the police station.  He was issued a citation for a cracked windshield, turn signal violation, and safety belt violation.

### III.   Assignments of Error

[I.] The trial court erred in failing to grant defendant Spivey's motion to suppress because the search and seizure which occurred were constitutionally invalid.

[II.] The trial court erred in failing to grant defendant Spivey's motion to suppress because the consent to search obtained was constitutionally

invalid.

[III.] The trial court erred in failing to grant defendant Spivey's motion to suppress because he was unlawfully detained.

## IV. Law and Analysis

### Standard of Review

{¶14} Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *State v. Treesh*, 90 Ohio St.3d 460, 472, 739 N.E.2d 749 (2001). Accordingly, reviewing courts must defer to the trial court findings of fact if competent, credible evidence exists to support the findings. *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995). A reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. *Long* at 332.

### Consent to Search and Continued Detention

{¶15} Within his three assignments of error, Spivey acknowledges that the initial traffic stop was permissible, but contends that the police impermissibly detained him after the purpose of the initial stop had been completed. He also contends that his consent to search was not voluntarily given.

{¶16} The trial court held a joint suppression hearing for Spivey and codefendant

Saleem. Saleem also appealed the trial court's denial of his suppression motion, raising the issues of consent to search and prolonged detention. *State v. Saleem*, 8th Dist. Cuyahoga No. 99330, 2013-Ohio-3732.

{¶17} The consent to search issue in *Saleem* was somewhat different than here because Saleem's challenge was based on third-party consent, that is, Spivey's consent. The issue in this case is not whether Spivey had the authority to consent but, rather, whether his consent was freely and voluntarily given.

{¶18} No Fourth Amendment violation occurs when an individual voluntarily consents to a search. *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002) (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990).

{¶19} Whether an individual voluntarily consented to a search is a question of fact, not a question of law. *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Schneckloth* at 227. Because a reviewing court should defer to a trial court when it acts as the trier of fact, an appellate court must give proper deference to a trial court's finding regarding whether a defendant voluntarily consented to a search. *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 21.

{¶20} Thus, appellate courts review trial court findings that a defendant voluntarily

consented to a search under the weight of the evidence standard set forth in *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). *Fry* at ¶ 22. Even though the state's burden of proof is "clear and convincing," this standard of review is highly deferential and the presence of "some competent, credible evidence" to support the trial court's finding requires us to affirm it. *Schiebel* at *id.*

{¶21} Moreover, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This principle applies to suppression hearings as well as to trials. *Fry* at ¶ 22, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982).

{¶22} Some factors for a court to consider in determining whether consent was voluntary include: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law"; and (7) the suspect's education and intelligence. *Schneckloth* at 248-249; *State v. Lattimore*, 10th Dist. Franklin App. No. 03AP-467, 2003-Ohio-6829, ¶ 14; *State v. Dettling*, 130 Ohio App.3d 812, 815-816, 721 N.E.2d 449 (9th Dist.1998).

{¶23} Upon review, we find that the evidence supports the trial court's determination that Spivey voluntarily consented to the search of the vehicle. We rely on

several of the *Schneckloth* factors in so finding. First, Spivey was not under arrest when he consented to the search. Rather, he was lawfully stopped for traffic violations. Second, the consent was given in the driveway of his aunt's home, as opposed to being given at a police station.

{¶24} Third, we are not persuaded by Spivey's contention that he "could hardly refuse [to consent] given the presence of at least two police officers, and given the fact that all of the other occupants of the car had been placed in other patrol cars * * *, and given the physical location of the police car blocking the car he was driving in his aunt's driveway."

{¶25} The record demonstrates that the encounter between Spivey and the police was non-confrontational, with no show of force. The police testified that they parked the police cruiser behind the car Spivey was driving because of the way it quickly turned into the driveway, which made them eager to get to the occupants. There was no indication of threats, promises, or coercive police procedures and, likewise, Spivey was not acting as if he was under duress; rather, he was cooperative with the police.

{¶26} Thus, in light of the above, Spivey's consent was voluntarily given. Moreover, in addressing the trial court's ruling on the defendants' motions to suppress in Saleem's appeal, this court found that, "our review of the testimony in this case shows that, under the totality of the circumstances, Spivey's consent was voluntary." *Saleem* at ¶ 28.

{¶27} In regard to the second issue presented in this appeal, the prolonged

detention, this court previously found that, "[b]ased on the totality of the circumstances, we do not find that Saleem's detention was unreasonable in scope or length." *Id.* at ¶ 38. We find that the same applies to Spivey, and cite this court's prior reasoning:

> A police officer may expand the scope of the stop and may continue to detain the vehicle without infringing on the Fourth Amendment
>
>> "if during the scope of the initial stop an officer encounters additional specific and articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, * * * for as long as the new articulable and reasonable suspicion continues."
>
> *State v. Waldroup*, 100 Ohio App.3d 508, 513, 654 N.E.2d 390 (12th Dist.1995). The scope of a detention "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). In determining whether a detention is reasonable, the court must look at the totality of the circumstances. *State v. Pope*, 8th Dist. Cuyahoga No. 92915, 2010-Ohio-1749, ¶ 25, citing *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988).
>
> * * *
>
> Here there was an articulable reason why the police wanted to search.
>
> The officers testified that they stopped the car for a cracked windshield. Then, because they were unable to determine the identity of a juvenile passenger, solely because that person had given the officers incorrect information, they removed the youth from the car to ask him a few questions. The officers decided to place the juvenile in the back of the

zone car to determine his identity. Officer Fogle asked the juvenile if he had anything illegal on him, to which the juvenile replied, "Yes." The officer patted the juvenile down, which Officer Hace testified was the procedure before anyone is placed in his zone car.

Officer Fogle testified he immediately felt what he knew from his experience and training was shotgun shells in the juvenile's pocket. The officers asked Spivey to get out of the car to question him about the shells found on his young passenger. It was at this time, before any other occupants of the car were removed, that Spivey gave consent to search the car. The officers located additional shotgun shells in plain view before finding two handguns in the unlocked glove box and a shotgun in the trunk of the car.

*Id.* at ¶ 32-33, 35-37.

{¶28} For the same reasons set forth in *Saleem*, we find that Spivey's detention was not unreasonable in scope or length.

{¶29} In light of the above, Spivey's three assignments of error are without merit and are overruled.

{¶30} Judgment affirmed.

It is ordered that appellee recover from appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR