[Cite as *State v. Harsh*, 2014-Ohio-251.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2013-07-025 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 1/27/2014 |
| - vs - | | |
| | : | |
| JOHN R. HARSH II, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20120156

Stephen J. Pronai, Madison County Prosecuting Attorney, Eamon Costello, 59 North Main Street, London, Ohio 43140, for plaintiff-appellee

Joseph S. Streb Co., L.P.A., Joseph S. Streb, 736 Neil Avenue, Columbus, Ohio 43215, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, John R. Harsh II, appeals from the Madison County Court of Common Pleas decision denying his motion to suppress and his request for dismissal. For the reasons outlined below, we affirm.

{¶ 2} On August 9, 2012, the Madison County Drug Task Force, in cooperation with the Ohio Bureau of Criminal Investigation, participated in a marijuana eradication operation in

Madison County. The operation included aerial observations by helicopter over certain designated areas within Madison County in order to locate and identify illegal marijuana grows. Agent Dwight Lee Aspacher, a member of the Bureau's Clandestine Drug Lab, Marijuana Suppression Unit, was assigned to serve as the "spotter." As a "spotter," Agent Aspacher was tasked with locating and identifying any illegal marijuana grows from the helicopter as it canvassed the area. Agent Aspacher has served in this capacity for over a decade and has a perfect record in positively identifying marijuana from the air.

{¶ 3} Shortly after taking off from the Madison County Airport, Agent Aspacher noticed what he believed to be several marijuana plants growing within a sunflower garden behind the home located at 931 Rosedale-Plain City Road, Plain City, Madison County, Ohio. After discovering what he believed was an illegal marijuana grow, Agent Aspacher radioed to ground units who immediately responded to the area.

{¶ 4} What occurred after the responding law enforcement officers arrived at the scene is in dispute. However, it is undisputed that Harsh, who was renting the property at issue, signed a consent form allowing the officers to search the property. It is also undisputed that the officers located approximately 38 marijuana plants growing on the property, as well as several dried marijuana plants hanging in a nearby barn.

{¶ 5} On November 15, 2012, the Madison County grand jury returned an indictment charging Harsh with one count of possession of drugs in violation of R.C. 2925.11(A), a third-degree felony. Following his arraignment, Harsh filed a motion to suppress and requested a dismissal of the single charge against him. After holding a hearing on the matter, the trial court denied Harsh's motion in its entirety. In so holding, the trial court found the seizure of the marijuana occurred after Harsh freely and voluntarily consented to the search of the property. As the trial court explicitly stated, Harsh "executed the search form immediately before the Drug Task Force members fanned out across [the] property and approached the

- 2 -

garden."

{¶ 6} On May 15, 2013, Harsh entered a plea of no contest and the trial court found him guilty. The trial court then sentenced Harsh to serve one year of community control. Harsh now appeals from the trial court's decision denying his motion to suppress and request for dismissal, raising two assignments of error for review.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE.

{¶ 9} In his first assignment of error, Harsh argues the trial court erred by denying his motion to suppress.[1] Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Johnson*, 12th Dist. Butler No. CA2012-11-235, 2013-Ohio-4865, ¶ 14; *State v. Eyer*, 12th Dist. Warren No. CA2007-06-071, 2008-Ohio-1193, ¶ 8.

{¶ 10} When reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14; *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and

---

1. It should be noted, as part of its decision denying Harsh's motion to suppress, the trial court determined the marijuana growing on the property was within the curtilage of the home, thereby placing it within the confines of the Fourth Amendment protections. *See State v. Williams*, 12th Dist. Butler No. CA2003-02-047, 2004-Ohio-2209, ¶ 16, citing *United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134 (1987) (finding the Fourth Amendment's protection against warrantless home entries extends to the curtilage of an individual's home). The state did not appeal from that decision, and therefore, we will not address any issues regarding that finding within this opinion.

determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Thomas*, 12th Dist. Warren No. CA2012-10-096, 2013-Ohio-3411, ¶ 18, quoting *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 11} Initially, Harsh argues the trial court erred by denying his motion to suppress for it is "improper for the government to go around conducting low-flying aircraft spy missions" without a search warrant. The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *State v. Dennis*, 12th Dist. Warren No. CA2012-01-004, 2012-Ohio-4877, ¶ 13; *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). However, it is well-established that warrantless aerial observations such as the one here are constitutional. *See California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809 (1986) (holding that the Fourth Amendment does not require the police traveling in the public airways to obtain a warrant in order to observe what is visible to the naked eye); *Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693 (1989) (finding helicopter surveillance did not constitute a search under the Fourth Amendment); *see also State v. Vondenhuevel*, 3d Dist. Logan No. 8-04-15, 2004-Ohio-5348, ¶ 16 (noting warrantless aerial observations have been upheld as constitutional). We see no reason to deviate from these long-standing principles.

{¶ 12} Next, Harsh argues the trial court erred by denying his motion to suppress because the officers conducted an "immediate raid" on the property without first obtaining a search warrant or his consent to search. In support of this claim, Harsh insists "the show of police force was well underway before any alleged consent was sought or obtained," thereby rendering his consent invalid and involuntary.

{¶ 13} Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the few specifically established and well-delineated

exceptions. *State v. Fisher*, 10th Dist. Franklin No. 10AP-746, 2011-Ohio-2488, ¶ 17. One such exception occurs "when a person waives his Fourth Amendment protection by consenting to a warrantless search." *State v. Oberding*, 12th Dist. Warren No. CA2011-09-101, 2012-Ohio-3047, ¶ 13, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041 (1973); *State v. Telshaw*, 195 Ohio App.3d 596, 2011-Ohio-3373, ¶ 16 (7th Dist.) (stating consent is a well-recognized exception to the warrant requirement).

{¶ 14} When the state attempts to justify a warrantless search on the basis of consent, "the state must demonstrate that the consent was freely and voluntarily given and not the result of coercion, express or implied." *State v. Taylor*, 77 Ohio App.3d 223, 226 (12th Dist.1991). The state has the burden to prove by clear and convincing evidence that the defendant's consent was freely and voluntarily given. *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 43; *State v. Jackson*, 110 Ohio App.3d 137, 142 (6th Dist.1996). "Whether an individual voluntarily consented to a search is a question of fact, not a question of law," that is determined based on the totality of the circumstances. *State v. Sinha*, 12th Dist. Butler No. CA2012-11-237, 2013-Ohio-5203, ¶ 16; *State v. Hopkins*, 12th Dist. Butler No. CA2004-03-065, 2005-Ohio-2109, ¶ 10. "Since this inquiry requires an assessment of the credibility of the evidence, the trier of fact is in the best position to make this determination, and its decision will not be reversed on appeal unless it is clearly erroneous." *Christopher* at ¶ 43, citing *In re Lester*, 12th Dist. Warren No. CA2003-04-050, 2004-Ohio-1376, ¶ 18; *State v. Foster*, 87 Ohio App.3d 32, 42 (2d Dist.1993).

{¶ 15} At the suppression hearing, Agent Aspacher testified that upon arriving at the scene, some of the responding officers approached the house and made contact with Harsh, whereas others ventured to the back of the property towards the sunflower garden where the marijuana was believed to be growing. However, when questioned further, Agent Aspacher specifically testified he believed the responding officers "had actually approached the house

first, prior to going out to the marijuana." In addition, Deputy Detective Harrison testified that upon his arrival at the scene, both he and Lieutenant Eric Semler first approached the house where they spoke with Harsh.

{¶ 16} According to Deputy Detective Harrison, after they made contact with Harsh, Lieutenant Semler asked Harsh if they could search the property. Harsh agreed and signed a consent form. Specifically, Deputy Detective Harrison testified, "Lieutenant Semler asked him if he had any questions, and he said no; and he asked if he would sign it, and he said, 'Yes, I will.'" Thereafter, when asked if Harsh was at all threatened to provide his consent or to sign the consent form, Deputy Detective Harrison testified as follows:

> No, I don't believe he was under threat at all. It was explained to Mr. Harsh why we were there. Lieutenant Semler explained that to him and asked if he would consent to a search, and Lieutenant Semler read him the form at that point. He said okay and signed it.

Deputy Detective Harrison also testified the responding officers did not block the driveway leading up to the house and that even though several cars were in the driveway "you could still get out."

{¶ 17} On the other hand, Harsh testified he heard a helicopter overhead and looked outside when he noticed several cars had pulled in and had blocked the driveway. According to Harsh, "a bunch of people" wearing masks and carrying machetes and guns then "jumped out" of the vehicles and immediately went towards the garden behind the house where they started "jerking stuff up." Harsh, however, also testified that he did not know what the officers were doing because he could not see the officers behind the house. Nevertheless, Harsh testified he was scared, that he was "freaking out," and that he did not know what to do.

{¶ 18} Continuing, Harsh testified he was then approached by a single unnamed officer who told him he "could sign the search or [he] could be put on the ground and

handcuffed until they could get a search warrant and then they would rip my house apart[.]" In addition, Harsh testified he did not know marijuana was growing in the garden. Instead, Harsh testified he thought the marijuana plants growing in the garden and hanging in the barn were actually "horse weed [sic] or something."[2]

{¶ 19} The state concedes, and we agree, there are some inconsistencies with the testimony provided during the suppression hearing from Agent Aspacher and Deputy Detective Harrison.[3] However, when viewing the evidence in its entirety, such inconsistencies are relatively insignificant and do not in any way contradict the trial court's findings. This is particularly true given the trial court found that Harsh's version of events was "extreme at best" and lacked any indicia of credibility. As stated previously, the trial court, as the trier of fact, was in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *Johnson*, 2013-Ohio-4865 at ¶ 14; *Eyer*, 2008-Ohio-1193 at ¶ 8.

{¶ 20} "[W]hen there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *United States v. Ward*, 400 Fed.Appx. 991, 996 (6th Cir.2010), quoting *United States v. Ivy*, 165 F.3d 397, 401-402 (6th Cir.1998). Such is the case here. In turn, while Harsh may disagree with the trial court's factual findings, when viewing the totality of the circumstances, we simply do not find the trial court erred in its decision finding the search and seizure of the marijuana was conducted after Harsh freely and voluntarily consented to the search of the property. *State v. Spivey*, 8th Dist. Cuyahoga No. 99694, 2013-Ohio-5581, ¶ 19, citing *State v. Fry*, 4th Dist. Jackson No.

---

2. Horseweed, also known as "marestail," is considered a noxious weed in Ohio. *See* Ohio Adm.Code 901:5-37-01(Q).

3. Harsh places great significance on Officer Donovan Cooper's testimony that he went directly to the marijuana upon arriving at the scene. However, Officer Cooper's testimony indicates he arrived after the other officers were already on the scene and consent had been obtained, thereby rendering his testimony immaterial to the issue at hand.

03CA26, 2004-Ohio-5747, ¶ 21.

**{¶ 21}** Despite this, Harsh claims the trial court erred by denying his motion to suppress because he was not given his *Miranda* warnings prior to offering his consent to search the property. However, "the *Miranda* warnings have no direct bearing on the issue of consent since consent is not interrogation nor a statement to police." *State v. Rice*, 5th Dist. Licking No. 02-CA-00096, 2003-Ohio-2860, ¶ 15; *United States v. Salvo*, 133 F.3d 943, 953-954 (6th Cir.1998) (finding even if the defendant was under custodial interrogation and should have received *Miranda* warnings, "that by itself would not be enough to vitiate an otherwise valid consent to search"). In other words, "consent to search is valid when voluntarily given, regardless of whether *Miranda* warnings have been given[.]" *State v. James*, 5th Dist. Richland No. CA-2808, 1991 WL 115988, *2 (June 10, 1991); *State v. Clelland*, 83 Ohio App.3d 474, 481 (4th Dist.1992) ("[t]he weight of authority holds that prior *Miranda* warnings are not required to validate consent searches, even when the consent is obtained after the defendant is effectively in custody"). Harsh's claim otherwise is simply incorrect.

**{¶ 22}** In light of the foregoing, we find the trial court did not err by finding Harsh had freely and voluntarily consented to the search of the property, thus leading to the seizure of the marijuana. As noted above, the trial court's factual findings were supported by competent and credible evidence, thereby requiring this court to accept them as true. *State v. Arthur*, 5th Dist. Delaware No. 2008-CA-36, 2008-Ohio-6285, ¶ 2 (finding appellate courts "are bound to accept facts as true if they are supported by competent, credible evidence"). Therefore, because we find no error in the trial court's decision denying Harsh's motion to suppress, Harsh's first assignment of error is overruled.

**{¶ 23}** Assignment of Error No. 2:

**{¶ 24}** THE TRIAL COURT ERRED IN FAILING TO DISMISS THE CHARGES

AGAINST DEFENDANT-APPELLANT.

{¶ 25} In his second assignment of error, Harsh argues the trial court erred by not dismissing the single charge against him since all of the evidence supporting the charge was obtained illegally. Based on our decision regarding Harsh's first assignment of error, we find no merit to Harsh's argument advanced under his second assignment of error. Therefore, Harsh's second assignment of error is likewise overruled.

{¶ 26} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.